BUCOLO ET AL. *v.* ADKINS, CHIEF JUSTICE, ET AL.

No. 75-369.  Decided March 8, 1976

See 316 So. 2d 551.

PER CURIAM.

Petitioners were convicted in the Circuit Court of Palm Beach County, Fla., of publishing certain comic strips and pictures in violation of the Florida obscenity statute.[1]  On appeal, the Supreme Court of Florida affirmed.[2]  In April 1975, we granted certiorari and summarily reversed the judgment of the Supreme Court of Florida, citing *Jenkins* v. *Georgia,* 418 U. S. 153 (1974), and *Kois* v. *Wisconsin,* 408 U. S. 229 (1972).[3]

The Supreme Court of Florida sent the case to the trial court "for further proceedings in which the standards established in *Miller* v. *California* [4] can be applied." [5]  Petitioners thereupon applied to us for a

---

[1] Fla. Stat. Ann. § 847.011 (Supp. 1975).

[2] *Bucolo* v. *State,* 303 So. 2d 329 (1974).

[3] *Bucolo* v. *Florida,* 421 U. S. 927.

[4] 413 U. S. 15 (1973).

[5] *Bucolo* v. *State,* 316 So. 2d 551 (1975).

writ of mandamus directing respondents "to vacate and expunge from the record" the opinion and mandate on remand of the Supreme Court of Florida. They complained that, in subjecting them to a second trial, the state court ignored this Court's determination that the published materials were not obscene.[6]

On November 4, 1975, while petitioners' request for mandamus was pending before us, the State Attorney of Palm Beach County, at the direction of the State's Attorney General, *nolle prossed* the charges. Florida follows the common law with respect to *nolle prosequi* and vests in its Attorney General exclusive discretion to determine that the State is "unwilling to prosecute." See 9 Fla. Jur., Criminal Law § 378 (1972). *Nolle prosequi*, if entered before jeopardy attaches, neither operates as an acquittal nor prevents further prosecution of the offense. See *id.*, § 438; *Smith* v. *State*, 135 Fla. 835, 186 So. 203 (1939). We are informed by the Florida Attorney General that, in the instant case, Florida's speedy-trial rule precludes renewed prosecution of petitioners. Therefore, the threatened injury which impelled petitioners to invoke our extraordinary jurisdiction would appear to be obviated. But, petitioners take the position that the entry of the *nolle prosequi* does not eliminate the necessity that we act to insure that the Supreme Court of Florida will conform its decision to the determination reached in this Court.

Petitioners further contend that in these circumstances the prosecutor's exercise of discretionary authority to

[6] In his response to petitioners' request for mandamus, the Attorney General of Florida concedes that "there is no question but that this Court in reversing [p]etitioners' conviction on April 21, 1975, by referring to [*Jenkins* and *Kois*], conclusively determined that the materials disseminated by petitioners were not obscene as a matter of law." He urges us, however, to deny relief on other grounds.

forgo further prosecution serves to deprive them of the exoneration to which this Court's reversal otherwise entitles them. They find support for this claim in the language of the *nolle prosequi* itself, which is, presumably, now a part of the permanent trial court record in this case. That document erroneously suggests that further proceedings applying *Miller* standards were ordered by this Court.[7] It also suggests that the State had become unwilling to prosecute solely as a result of the passage of time. We agree with petitioners that nothing in the state-court record, as it now stands, recognizes that the State was foreclosed by this Court's decision from seeking to convict petitioners of obscenity violations. We are unable to dismiss as insignificant petitioners' plaint that the judgment of the Supreme Court of Florida, as it now stands, obscures this Court's favorable adjudication on the merits—an adjudication which requires full recognition by the state courts in order effectively to dispel any opprobrium resulting from the accusation of obscenity.

Observation of the disposition of this case following our summary reversal reveals that the Supreme Court of Florida has attributed to this Court a decision which it never made. Further proceedings pursuant to the information charging petitioners with violating Florida's obscenity statute were clearly foreclosed. In that circumstance, the state court's failure to give effect to that judgment was not cured by the intervening exercise of prose-

---

[7] Petitioners direct our attention to the document filed by the prosecutor in support of his decision to *nolle prosse* the charges. It contains the following notation:

"SUPREME COURT OF THE UNITED STATES REMANDED THIS CASE UNDER GUIDELINES OF *MILLER* V. *CALIFORNIA*. THIS CASE NOLLE PROSSED USING PROSECUTORIAL DISCRETION REGARDING ITS AGE AND LOCATION OF WITNESSES."

cutorial discretion. Accordingly, the motion for leave to file a petition for a writ of mandamus ordering the Supreme Court of Florida to conform its decision to our mandate is granted. Assuming as we do that the Supreme Court of Florida will conform to the disposition we now make, we do not now issue the writ of mandamus. *Deen* v. *Hickman,* 358 U. S. 57 (1958).

MR. JUSTICE STEVENS, with whom MR. JUSTICE REHNQUIST joins, dissenting.

In *Deen* v. *Hickman,* 358 U. S. 57, it was necessary to require the Texas Supreme Court to conform its decision to our mandate in order to make sure that further proceedings in the underlying litigation would be properly conducted. In this case no matter what we do, there will be no further proceedings in the underlying litigation. The circumstances recited in the opinion of the Court, therefore, would not justify the issuance of an extraordinary writ. Since I would not vote in favor of such a writ, I would also deny the motion for leave to file.