[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Soto,* Slip Opinion No. 2019-Ohio-4430.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4430

THE STATE OF OHIO, APPELLANT, *v*. SOTO, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Soto,* Slip Opinion No. 2019-Ohio-4430.]

*Criminal law—Double jeopardy—Double Jeopardy Clauses do not bar murder prosecution of defendant whose prior involuntary-manslaughter charge was dismissed under plea agreement—Court of appeals' judgment reversing trial court's denial of defendant's motion to dismiss reversed and cause remanded.*

(No. 2018-0416—Submitted March 6, 2019—Decided October 31, 2019.)

APPEAL from the Court of Appeals for Putnam County, No. 12-17-05, 2018-Ohio-459.

_____

**DEWINE, J.**

{¶ 1} In 2006, a two-year-old boy was killed. At the time, his father, Travis Soto, told police that he had accidentally caused the boy's death while driving an ATV. Soto was charged with child endangering and involuntary manslaughter. He

entered into a plea agreement whereby he pleaded guilty to child endangering and the other charge was dismissed. He served his time in prison. That might have been the end of the story.

{¶ 2} But several years after his release, Soto told authorities that his previous account was a lie. The truth, he said, was that he had beaten his son to death. The state then charged Soto with murder and aggravated murder, among other offenses. We now must decide whether the constitutional prohibition against double jeopardy bars the murder charges.

{¶ 3} We hold that because the involuntary-manslaughter charge was dismissed prior to the empaneling of a jury, jeopardy never attached to that charge. Because of this, the double-jeopardy prohibition does not prevent the state from prosecuting Soto for murder or aggravated murder. For that reason, we reverse the judgment of the Third District Court of Appeals.

## I. BACKGROUND

{¶ 4} As recounted by both parties, the relevant facts are as follows. In January 2006, Soto's son, Julio, was killed. Based on Soto's statements at the time, authorities believed that the child had died in a tragic ATV accident.

{¶ 5} In 2006, Soto gave authorities two different stories about what had happened. Initially, Soto told investigators that he had accidentally run over Julio with an ATV after turning a corner around a building on his property. Later, Soto told authorities that Julio had been riding with Soto on the vehicle and was struck after he fell off. The Lucas County Coroner's Office conducted an autopsy and concluded that Julio's injuries were consistent with an ATV accident.

{¶ 6} After being charged with child endangering under R.C. 2919.22(A) and involuntary manslaughter under R.C. 2903.04(A), Soto negotiated a plea agreement. He pleaded guilty to child endangering, and the involuntary-manslaughter charge was dismissed. Soto was sentenced to five years in prison, which he served.

{¶ 7} But it turns out that Julio's death may not have been accidental. In July 2016, Soto went to the Putnam County Sheriff's Office and confessed that he had beaten the child to death and fabricated the ATV accident. A doctor specializing in pediatric abuse reviewed the 2006 autopsy report and photographs taken at the time and concluded that the child's injuries were consistent with Soto's more recent story. Specifically, the doctor pointed to the fact that there were no bone fractures, which would normally be expected in an ATV accident. Authorities then indicted Soto for aggravated murder, murder, felonious assault, kidnapping, and tampering with evidence.

{¶ 8} In October 2016, Soto filed a motion to dismiss the murder charges. The motion argued that the charges were barred by the Fifth Amendment's prohibition against a person being "twice put in jeopardy of life or limb." Fifth Amendment to the U.S. Constitution. He asserted that involuntary manslaughter is a lesser included offense of murder and aggravated murder and that the state is therefore barred from prosecuting those charges.

{¶ 9} The trial court denied the motion, concluding that the double-jeopardy protection does not bar Soto's prosecution for murder and aggravated murder. The court reasoned that under the test set forth in *Blockburger v. United States*, involuntary manslaughter with a child-endangering predicate is not the same offense as murder with a felonious-assault predicate. *See* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

{¶ 10} Soto filed an interlocutory appeal of the trial court's denial of his motion to dismiss—a procedural step that was appropriate based on this court's decision in *State v. Anderson*, which allowed an interlocutory appeal of a denial of a motion to dismiss on double-jeopardy grounds. 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 26; *see also Abney v. United States*, 431 U.S. 651, 659, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). Soto asserted a single assignment of error in his

appeal: "The trial court erred [in] over[ruling] Defendant's Motion to Dismiss on Double Jeopardy Grounds."

{¶ 11} In a two-to-one decision, the court of appeals reversed the trial court's denial of Soto's motion to dismiss. The majority concluded that "because Involuntary Manslaughter constitutes a lesser included offense of Aggravated Murder and Murder, the principles of Double Jeopardy would prevent a subsequent prosecution of Soto for Aggravated Murder and Murder in this instance." 2018-Ohio-459, 94 N.E.3d 618, ¶ 34. The majority noted that although Soto was not convicted of involuntary manslaughter, "he was in jeopardy of being tried and convicted of Involuntary Manslaughter but-for the plea agreement." *Id.* at ¶ 22. Writing in dissent, Judge Zimmerman argued that because the involuntary-manslaughter charge had been dismissed, jeopardy had not attached to that charge. *Id.* at ¶ 38 (Zimmerman, J., dissenting). The dissenting opinion therefore concluded that double-jeopardy principles do not bar Soto's prosecution for murder and aggravated murder. As explained below, Judge Zimmerman was right.

## II. ANALYSIS

### A. Double-Jeopardy Principles Do Not Bar Soto's Prosecution

{¶ 12} The Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The Ohio Constitution contains a similarly worded guarantee: "No person shall be twice put in jeopardy for the same offense." Ohio Constitution, Article I, Section 10.[1] We have read these provisions to protect against three distinct wrongs: "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Gustafson*, 76 Ohio St.3d 425, 432,

---

1. In the past, we have treated the two guarantees as "coextensive." *State v. Gustafson*, 76 Ohio St.3d 425, 432, 668 N.E.2d 435 (1996). Because neither party has presented a contrary argument, we have no opportunity to revisit that determination today.

668 N.E.2d 435 (1996), citing *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).

{¶ 13} The court of appeals determined that the first protection—preventing a second prosecution for the same offense following an acquittal—was violated here because Soto had been indicted for involuntary manslaughter in 2006 and was now facing prosecution for murder and aggravated murder. Treating the dismissal of the involuntary-manslaughter charge as an acquittal, the court concluded that further prosecution of Soto violated the Double Jeopardy Clauses because under the test set forth in *Blockburger*, murder and aggravated murder constitute the same offense as involuntary manslaughter. But a dismissal is not equivalent to an acquittal. By their plain terms, the Double Jeopardy Clauses apply only when someone would be "twice put in jeopardy." Because Soto was never put in jeopardy for the dismissed 2006 involuntary-manslaughter charge, the Double Jeopardy Clauses do not bar his subsequent prosecution for murder and aggravated murder.

{¶ 14} Because the involuntary-manslaughter charge was dismissed under his plea agreement, Soto was never tried for involuntary manslaughter nor was he convicted of or punished for that crime. In treating the dismissal of the involuntary-manslaughter charge as an acquittal, the court of appeals ignored the principle that a dismissal entered before jeopardy attaches does not function as an acquittal and does not prevent further prosecution for the offense. *See C.K. v. State*, 145 Ohio St.3d 322, 2015-Ohio-3421, 49 N.E.3d 1218, ¶ 15; *Bucolo v. Adkins*, 424 U.S. 641, 642, 96 S.Ct. 1086, 47 L.Ed.2d 301 (1976).

{¶ 15} The dissent advances the novel proposition that double jeopardy attaches to a charge dismissed under a plea agreement—here, the involuntary-manslaughter charge. In support of this view, the dissent points to cases holding that jeopardy attaches when a court accepts a guilty plea. Dissenting opinion at ¶ 37-38. Of course, that's true. But what the dissent neglects to mention is that the principle applies only to the charges to which a defendant pleads guilty. *See, e.g.*,

*United States v. Soto-Alvarez*, 958 F.2d 473, 482 (1st Cir.1992), fn. 7 ("jeopardy ordinarily does not attach to counts which are dismissed and on which no finding of guilty is made"); *United States v. Dionisio*, 503 F.3d 78, 89 (2d Cir.2007) (holding that jeopardy did not attach to charges that were dismissed with prejudice under a plea agreement, when the dismissal did not entail a "resolution of any factual elements that went to the merits of the charges"). Tellingly, the dissent does not cite a single case adopting its view that double jeopardy applies to a charge, like the one at issue here, that was dismissed under a plea agreement before being put to a trier of fact.[2]

{¶ 16} It is axiomatic that when a charge is dismissed before jeopardy attaches, the double-jeopardy protections do not prevent subsequent prosecution for the dismissed charge. *See C.K.* at ¶ 15; *State v. Grillo*, 2015-Ohio-308, 27 N.E.3d 951, ¶ 25 (5th Dist.). For charges to which the defendant did not plead guilty, jeopardy does not attach until a jury is empaneled or, in a bench trial, when the judge starts taking evidence. *Gustafson*, 76 Ohio St.3d at 435, 668 N.E.2d 435. Because Soto entered his guilty plea prior to the empaneling of a jury or the taking of evidence, jeopardy attached—but only as to the child-endangering charge to which he pleaded guilty and not as to the dismissed involuntary-manslaughter charge.

{¶ 17} Soto has not argued that child endangering constitutes the same offense as murder and aggravated murder. And for good reason—under the *Blockburger* test, it is plain that the child-endangering charge does not constitute the same offense as the murder charges, because each of the murder offenses contains an element not found in child endangering and child endangering contains an element not found in the murder offenses. As a result, the Double Jeopardy Clauses do not bar Soto's prosecution for murder and aggravated murder.

---

2. The dissent attempts to enlist *Dionisio* in support of its novel view, but in *Dionisio*, the court held that jeopardy did not attach to charges dismissed under a plea agreement.

**B. We Dismiss as Improvidently Accepted the Proposition of Law Relating to Soto's Plea Agreement**

{¶ 18} We accepted three propositions of law in this case. The first two challenge the court of appeals' conclusion that Soto's prosecution is barred by the constitutional double-jeopardy protections. The third asserts: "A negotiated plea does not bar successive prosecutions where the defendant would not reasonably believe that his or her plea would bar further prosecutions for any greater offense related to the same factual scenario."

{¶ 19} This third proposition of law relates not to the constitutional double-jeopardy protection but, rather, to a claim for relief based on the contents of Soto's plea agreement. *See, e.g.*, *State v. Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, ¶ 22. Separate and apart from the constitutional protections provided by the double-jeopardy provisions, a plea agreement may bar further charges based on principles of contract law. *Id.* at ¶ 21. The underlying premise is that when a plea rests on a promise made by the prosecutor, that promise must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *see also State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 50. The rule is "based on contract-law principles, not the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution." *Dye* at ¶ 20, fn. 2.

{¶ 20} Upon reflection, we dismiss the third proposition of law as having been improvidently accepted. In doing so, we note that Soto did not raise a claim related to the content of his plea agreement in the trial court—rather, he sought relief there based solely on the constitutional prohibition against double jeopardy. Further, Soto did not raise an assignment of error identifying the plea agreement as a basis for relief in the court of appeals. And while the court of appeals did discuss the negotiated plea generally, it did so in the context of the constitutional double-

jeopardy prohibition and did not consider the plea agreement as a separate basis for relief. Thus, the issue is not properly before us.[3]

{¶ 21} The dissent conflates the contractual-plea-agreement argument with the separate double-jeopardy argument and is eager to hold that the agreement bars the present charges against Soto. Dissenting opinion at ¶ 54. The dissent also asserts that under our analysis, "no plea bargain is necessarily conclusive and any plea agreement can be negated." *Id*. at ¶ 53. But this misconstrues our holding. We take no view about whether Soto's plea agreement might serve as a bar to the murder charges. Soto did not present a plea-agreement claim to the trial court, and the agreement was never put into the record. Nor did he raise an assignment of error relating to the plea agreement in the court of appeals. It would be improper for us to reach that issue under the present procedural posture of the case. Further, to do so would require us to speculate about the contents of a plea agreement that is found nowhere in the record before us.

### III. CONCLUSION

{¶ 22} We reverse the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and KENNEDY, FRENCH, and FISCHER, JJ., concur.

STEWART, J., concurs in judgment only.

DONNELLY, J., dissents, with an opinion.

_____

3. We further note that this court has never addressed whether an interlocutory appeal may be brought based on the denial of a motion to dismiss on the basis of a plea agreement (as opposed to the constitutional double-jeopardy prohibition). *Compare State v. Anderson*, 8th Dist. Cuyahoga No. 106304, 2018-Ohio-3051 (allowing interlocutory appeal) *with State v. Ammons*, 9th Dist. Summit No. 28675, 2019-Ohio-286 (concluding that that issue was not ripe for review in an interlocutory appeal). We have no occasion to do so today, because Soto never sought an interlocutory appeal on that basis.

**DONNELLY, J., dissenting.**

{¶ 23} The constitutional prohibition against double jeopardy bars appellee Travis Soto's prosecution for murder and aggravated murder; because the majority concludes otherwise, I respectfully dissent. I would affirm the judgment of the court of appeals.

## BACKGROUND[4]

{¶ 24} On January 23, 2006, Travis Soto's two-year-old son, Julio, was found dead. Julio was in Soto's care that day. When questioned by the police, Soto told two separate versions of how Julio had died. First, Soto explained that he had accidently run over Julio with his all-terrain vehicle ("ATV") after turning a corner around a building on his property. Later, Soto told authorities that Julio had been riding on the ATV and was struck by the ATV after he fell off it. Soto told the detectives that he had carried Julio inside the house, cleaned him, rocked him until he stopped crying, and put him to bed. Soto did not call 9-1-1 or attempt to get any medical care for Julio. Two or three hours later, when Julio's mother returned home, Soto informed her that Julio had died.

{¶ 25} Based on Soto's explanations, an autopsy was conducted, and it was concluded that Julio's injuries were consistent with an ATV accident.

{¶ 26} On March 31, 2006, a grand jury returned a two-count indictment against Soto for causing the death of his son. Count one charged a violation of R.C. 2903.04(A), involuntary manslaughter, for causing the death of another as a proximate result of committing or attempting to commit a felony, and count two charged a violation of R.C. 2919.22(A) and (E)(1)(c), child endangering. On August 31, 2006, the trial court accepted a negotiated plea agreement between the state and Soto whereby in exchange for his guilty plea to child endangering, the

---

4. The facts are taken from the representations made by the parties in their respective briefs.

state dismissed the involuntary-manslaughter charge. The court sentenced Soto to five years in prison.

{¶ 27} On July 25, 2016, several years after he was released from prison, Soto went to the authorities and gave a third version of Julio's death.[5] In this account, Soto said that he had beaten Julio to death and fabricated the ATV accident. A pediatric-abuse specialist reviewed the 2006 autopsy report and photographs taken at the time and concluded that Julio's injuries were consistent with Soto's new version of the facts. Armed with this new version, the state quickly went back to the grand jury.

{¶ 28} On August 15, 2016, the state again indicted Soto for causing the death of his son. This time, the state charged Soto with aggravated murder, in violation of R.C. 2903.01(C), for purposely causing the death of another under the age of 13; murder, in violation of R.C. 2903.02(B), for causing the death of another as a proximate result of committing or attempting to commit a felony of the first or second degree that is an offense of violence; felonious assault, in violation of R.C. 2903.11(A)(1); kidnapping in violation of R.C. 2905.01; and tampering with evidence in violation of R.C. 2921.12(A)(1).

{¶ 29} On October 11, 2016, Soto filed a motion to dismiss the murder and aggravated-murder charges based on the constitutional prohibition against double jeopardy. Soto argued that involuntary manslaughter (which was the charge dismissed by agreement in 2006 when he pleaded guilty to child endangering) is a lesser included offense of both murder and aggravated murder (which were charged in 2016) and that the plea agreement therefore precludes his subsequent prosecution on these greater charges. The state responded by arguing that the involuntary-

_____

5. At a competency hearing, a psychiatrist and a psychologist each testified that Soto had indicated he had begun experiencing auditory hallucinations, that these voices were telling him that he had killed his son, and that Soto had gone to the police and given this third account because of these voices.

manslaughter charge was not the same offense as murder and aggravated murder for purposes of a double-jeopardy analysis, that despite the state's due-diligence, the information necessary to charge Soto with the later charges could not have been discovered, and that Soto could not have reasonably believed that his negotiated plea based on his 2006 accounts of Julio's death would bar Soto's subsequent prosecution on greater charges.

{¶ 30} On April 13, 2017, the trial court denied Soto's motion to dismiss, concluding that involuntary manslaughter is not the same offense as murder and aggravated murder for double-jeopardy purposes; that even if they were the same offenses under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the information necessary to support the later charges could not have been discovered despite the state's exercise of due diligence; and that Soto could not have reasonably believed that his 2006 negotiated plea to child endangering and the 2006 dismissal of the involuntary-manslaughter charge based on his initial accounts of Julio's death would bar Soto's subsequent prosecution on the greater charges based on newly discovered evidence that would transform the case from one of an accidental death to a purposeful homicide.

{¶ 31} Soto filed an interlocutory appeal, and the Third District Court of Appeals reversed the trial court's judgment. In a two-to-one decision, the Third District determined that involuntary manslaughter, murder, and aggravated murder are the same offenses under the Double Jeopardy Clauses; that the due-diligence exception does not apply, because the state had failed to conduct a full and complete investigation and instead relied on Soto's purported confession; and that *State v. Carpenter*, 68 Ohio St.3d 59, 623 N.E.2d 66 (1993), bars Soto's subsequent indictment for aggravated murder and murder because at the time of the plea agreement, the state failed to reserve the right to bring additional charges against Soto. The dissenting opinion made the assumption that the state nolled the involuntary-manslaughter charge before jeopardy attached (i.e., prior to swearing

in a jury or the first witness) and that the nolle of the involuntary-manslaughter charge therefore neither operated as an acquittal nor prevented Soto's further prosecution for that offense. Accordingly, the dissent concluded that Soto could be tried on the murder and aggravated-murder charges.

## ANALYSIS

### Majority opinion

{¶ 32} The majority determines that the issue before this court is "whether the constitutional prohibition against double jeopardy bars the murder charges." Majority opinion at ¶ 2. In resolving that issue, the majority holds that because the involuntary-manslaughter charge was dismissed prior to empanelment of a jury, jeopardy never attached to the charge and therefore, the double-jeopardy prohibition does not prevent the state from prosecuting Soto for murder or aggravated murder.

{¶ 33} In framing the issue, the majority ignores the procedural nature of the case and stops short of answering the actual question before us. The issue to be addressed is whether the constitutional prohibition against double jeopardy bars murder charges *when the lesser included offense of involuntary manslaughter has been dismissed as a result of a negotiated plea agreement*. Given the actual question before us, I believe that the majority's determination that double jeopardy did not attach because the lesser included offense was dismissed before a jury was empaneled is irrelevant, as explained below.

### Double Jeopardy Clauses[6]

{¶ 34} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence

---

6. The state's third proposition of law presents a separate theory for reversal based on contract-law principles, asserting that Soto could not have reasonably expected based on his plea agreement that he would not face future prosecution for greater offenses relating to the death of his son. My disagreement with the majority centers instead on its interpretation of the Double Jeopardy Clauses as applied to a conviction entered by way of a guilty plea.

12

to be twice put in jeopardy of life or limb." The Ohio Constitution conveys a similar guarantee: "No person shall be twice put in jeopardy for the same offense." Ohio Constitution, Article I, Section 10.

{¶ 35} The Double Jeopardy Clause serves the fundamental policy of protecting a defendant's finality interest so that a defendant will not be subject to the state's attempts to relitigate the facts or secure additional punishment after a conviction and sentence. *United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). "What lies at the heart of the Double Jeopardy Clause is the prohibition against multiple prosecutions for 'the same offense.' " *Jeffers v. United States*, 432 U.S. 137, 150, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (plurality opinion), quoting the Fifth Amendment. The clause provides critical protections against (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds*, *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). "Where successive prosecutions are at stake, the guarantee serves 'a constitutional policy of finality for the defendant's benefit.' " *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), quoting *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion).

{¶ 36} The majority says that jeopardy did not attach to the lesser included offense of involuntary manslaughter, based on the facts that a jury was not sworn in and evidence was not taken by the trial court. Those facts are true—and beside the point. Here, Soto's fate was not decided by a jury or bench trial. Instead, Soto's criminal case was resolved by a guilty plea. And that is what a guilty plea does: it waives a jury trial and eliminates the taking of evidence at a bench trial. Crim.R. 11(B) and (C).

**{¶ 37}** In *State v. Gustafson*, a case cited by the majority, this court recognized that jeopardy attaches, so as to preclude subsequent criminal proceedings, at different points in time depending on the nature of the proceeding in question.  76 Ohio St.3d 425, 435, 668 N.E.2d 435 (1996).  And although jeopardy attaches when a jury is empaneled and sworn in or the court begins to hear evidence at a bench trial, a different rule applies when the defendant has elected not to proceed to trial.  *See United States v. McIntosh*, 580 F.3d 1222, 1224 (11th Cir.2009).  In that situation, jeopardy attaches when the court unconditionally accepts a guilty plea.  *Id.*; *United States v. Sanchez*, 609 F.2d 761, 762 (5th Cir.1980).[7]

**{¶ 38}** As explained in *McIntosh*, "[t]he acceptance of an unconditional plea 'is itself a conviction.  Like a verdict of a jury it is conclusive.  More is not required; the court has nothing to do but give judgment and sentence.' "  *Id.* at 1228, quoting *Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); *see also United States v. Cambindo Valencia*, 609 F.2d 603, 637 (2d Cir.1979) ("The Government makes the rather remarkable argument that, because a jury was not impaneled in respect to the earlier indictment, jeopardy did not attach.  Of course, however, it is axiomatic of the double jeopardy clause that jeopardy attached once [the defendant's] guilty plea was accepted"); *United States v. Ursery*, 59 F.3d 568, 572 (6th Cir.1995), *rev'd on other grounds*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *Peiffer v. State*, 88 S.W.3d 439, 444 (Mo.2002); *State v. McAlear*, 519 N.W.2d 596, 599 (S.D.1994).

**{¶ 39}** The majority cites *United States v. Soto-Alvarez*, 958 F.2d 473 (1st Cir.1992), and *United States v. Dionisio*, 503 F.3d 78 (2d Cir.2007), for the

---

7. Other courts have held there must be a judgment or sentence before a guilty plea may qualify as a conviction for purposes of double jeopardy. *See, e.g.*, *State v. Stone*, 400 P.3d 692, ¶ 25 (Mt.2017). Although the United States Supreme Court has yet to decide when jeopardy attaches in a guilty-plea case, it has assumed that jeopardy attaches at least by the time of sentencing on the plea. *Ricketts v. Adamson*, 483 U.S. 1, 8, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987).

proposition that jeopardy attaches only to the charges to which a defendant pleads guilty. Majority opinion at ¶ 15. However, a closer reading of these decisions is warranted.

**{¶ 40}** First, *Soto-Alvarez* offers no analysis to support the proposition for which the majority cites that decision. The proposition was summarily mentioned in a footnote in which the court stated that it was concerned only "with the two charges to which the defendant pled guilty since jeopardy ordinarily does not attach to counts which are dismissed and on which no finding of guilty is made." *Soto-Alvarez* at 482, fn. 7. The absence of analysis in *Soto-Alvarez* undermines its persuasive value here.

**{¶ 41}** *Dionisio* actually supports the conclusion that jeopardy attached in this case. In that case, the Second Circuit rejected the district court's categorical ruling that a pretrial dismissal with prejudice cannot trigger the attachment of jeopardy. *Dionisio* at 82. The appellate court recognized that it is not necessary to have an actual acquittal or conviction to trigger double jeopardy, noting that "[w]hat is crucial, instead, is whether the defendant faced the risk of a determination of guilt, and this may well include exposure to risk of conviction in a pretrial plea proceeding." *Id.* at 83.

**{¶ 42}** Here, Soto faced exposure to the risk of convictions for both involuntary manslaughter and child endangering as charged in the indictment. In exchange for an agreement to plead guilty to child endangering, the state agreed to drop the involuntary-manslaughter charge. But for the state's agreement to drop the involuntary-manslaughter charge, Soto unquestionably faced the risk of a determination of guilt on the involuntary-manslaughter charge. Accepting Soto's plea, the trial court conclusively determined his criminal culpability for purposes of double jeopardy.

**{¶ 43}** The majority cites *C.K. v. State*, 145 Ohio St.3d 322, 2015-Ohio-3421, 49 N.E.3d 1218, and *Bucolo v. Adkins*, 424 U.S. 641, 96 S.Ct. 1086, 47

L.Ed.2d 301 (1976), for the principle that a dismissal entered before jeopardy attaches does not function as an acquittal and does not prevent further prosecution for the offense.  Although these cases may support that principle, they are easily distinguishable from this case.

{¶ 44} In *C.K.*, the defendant was seeking to be declared a wrongfully imprisoned individual as defined in R.C. 2743.48 because his murder conviction had been reversed as against the manifest weight of the evidence and the state had dismissed the indictment without prejudice.  In determining that C.K. could not establish he was a wrongfully imprisoned individual pursuant to the statute, this court recognized that a reversal of a conviction as against the manifest weight of the evidence does not bar retrial on the same charge.

{¶ 45} Therefore, *C.K.* simply stands for the proposition that the state has discretion to dismiss charges without prejudice to allow further investigation of the underlying crimes and to avoid putting a defendant in jeopardy on evidence of uncertain credibility.  *Id.* at ¶ 17.  That proposition has no relevance here, however, because the state and trial court accepted the dismissal in simultaneous exchange for Soto's pleading guilty to child endangering.

{¶ 46} Similarly, *Bucolo* has no application to the facts of this case.  In *Bucolo*, the petitioners were convicted of publishing certain comic strips and pictures in violation of a state obscenity statute.  The convictions were affirmed on appeal.  The United States Supreme Court summarily reversed.  The state then nolle prossed the charges, but on remand, the Supreme Court of Florida sent the case back to the trial court " 'for further proceedings.' "  424 U.S. at 641, 96 S.Ct. 1086, 47 L.Ed.2d 301, quoting *Bucolo v. State*, 316 So.2d 551 (Fla.1975).  The petitioners then petitioned the United States Supreme Court for a writ of mandamus to prevent the state from reprosecuting them.  It was in this context that the court noted that recharging the petitioners with violations of the state obscenity statute was clearly foreclosed and that the state's failure to give effect to the United States Supreme

Court's prior judgment was not cured by the intervening exercise of prosecutorial discretion. Therefore, the court's statement in *Bucolo* that nolle prosequi, if entered before jeopardy attaches, neither operates as an acquittal nor prevents further prosecution of the offense, *id.* at 642, offers no better understanding of the issue before us.

### Soto's guilty plea

{¶ 47} When this case was initially investigated, Soto told two different versions of the cause of his son's death. This should have raised immediate concerns about Soto's credibility. After the child's death was investigated, the state assessed what it believed the truth to be and presented charges to the grand jury. A true bill was returned, and Soto was indicted on two counts: involuntary manslaughter with a child-endangering predicate offense and child endangering. At his arraignment, Soto pleaded not guilty to both counts.

{¶ 48} At that point, the state had accused Soto of committing involuntary manslaughter and child endangering and the judge assigned to hear the case and resolve this criminal dispute was operating under the assumption that the state was prepared to prove the truth of these allegations beyond a reasonable doubt.

{¶ 49} Soto had a constitutional right to hold the state to its burden and have a fact-finder (jury or court) decide whether he was guilty beyond a reasonable doubt of involuntary manslaughter and child endangering. Scott, *Plea Bargaining as Contract*, 101 Yale L.J. 1909, 1914 (1992). Instead, Soto and the state chose to enter into a negotiated plea agreement.[8] Under that agreement, the state gave up the chance to prosecute Soto for involuntary manslaughter or any other type of murder charge with the same elements in exchange for Soto's guilty plea. *Id.* When Soto's plea was unconditionally accepted, a record was thereby created that then

---

8. Although it is true that the record does not contain a transcript of the plea or sentencing hearings in the 2006 case, the parties do not deny and, in fact, agree that they entered into a negotiated plea agreement.

became the "truth" regarding the crime Soto committed resulting in the death of his son. *See* Johnson, *Fictional Pleas*, 94 Ind.L.J. 855, 897 (2019) (a "fictional" guilty plea creates a record that then becomes "truth" and serves as a permanent record of conviction).

{¶ 50} In a negotiated plea agreement, the parties trade various risks and entitlements. Scott at 1914. When a defendant enters into a plea agreement with the state, both sides intend that it fully resolve the matter. Chinn, *A Deal Is a Deal: Plea Bargains and Double Jeopardy after* Ohio v. Johnson, 37 Seattle U.L.Rev. 286, 301 (2013). The defendant forgoes fundamental constitutional rights (such as the right to a jury, the presumption of innocence, and the right to be convicted by proof beyond a reasonable doubt)[9] in exchange for the dismissal of some charges, the hope of a lesser sentence, or both. Scott at 1920; Johnson at 868. The state gives up prosecuting the defendant for all the charged offenses in exchange for a quicker, less costly resolution and a sure conviction. Johnson at 868.

{¶ 51} Here, in entering into the plea agreement, the state did not have to rely solely on Soto's questionable versions of the facts. In fact, a prosecutor is presumed to have done due diligence in conducting an investigation to ensure that a plea bargain is appropriate. Chinn at 297. Every other litigant in our justice system is expected to exercise due diligence before taking actions having conclusive judicial effect. Should the state, with its vast resources, be uniquely relieved of this responsibility?

{¶ 52} A plea determines a defendant's fate with respect to the offenses arising out of the criminal episode (here, the death of Soto's son). In this case, the state obtained a conviction without having to prove beyond a reasonable doubt that Soto committed the offenses as charged in the 2006 indictment. Soto received the

---

9. *See Duncan v. Louisiana*, 391 U.S. 145, 157-158, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

benefit of having the involuntary-manslaughter charge dropped. The state did not reserve any right to bring new charges. *See Carpenter*, 68 Ohio St.3d 59, 623 N.E.2d 66. Although the bargain reached in a plea agreement may not (and often does not) reflect a defendant's actual culpability, it does reflect a mutually agreed resolution.

**{¶ 53}** Under the majority's conclusion, no plea bargain is necessarily conclusive and any plea agreement can be negated with new information. To accept this position is to declare that a plea agreement is not worth the paper it is journalized on.

**{¶ 54}** I believe that the court of appeals' majority opinion got it right. Soto was charged with involuntary manslaughter in 2006, and that charge was dismissed pursuant to a plea agreement in which Soto agreed to plead guilty to child endangering, the predicate offense of the involuntary-manslaughter charge. Thus, while Soto was not convicted of involuntary manslaughter, he would have been in jeopardy of being tried and convicted of involuntary manslaughter but for the plea agreement resulting in his conviction and sentence for the predicate offense of child endangering. Because involuntary manslaughter is a lesser included offense of aggravated murder and murder, *see State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 79; *State v. Thomas*, 40 Ohio St.3d 213, 216, 553 N.E.2d 286 (1988), Soto's subsequent prosecution for these offenses is barred.

## CONCLUSION

**{¶ 55}** I would hold that Soto may not be prosecuted for aggravated murder or murder, because his 2006 plea agreement disposed of the involuntary-manslaughter charge against him. Accordingly, I would affirm the judgment of the court of appeals.

_____

Gary L. Lammers, Putnam County Prosecuting Attorney, for appellant.

Timothy Young, Ohio Public Defender, and Carly M. Edelstein, Assistant Public Defender, for appellee.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christopher D. Schroeder, Assistant Prosecuting Attorney, urging reversal for amicus curiae, Cuyahoga County Prosecutor's Office.

_____