[Cite as *State v. Madrigal*, 2023-Ohio-488.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                            Court of Appeals No.  L-22-1014
                                                                                    L-22-1071
        Appellee
                                                                Trial Court No.  CR0199605761
v.                                                                                    CR0200701081

Jamie R. Madrigal                              **DECISION AND JUDGMENT**

        Appellant                                      Decided:  February 17, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Jamie R. Madrigal, pro se.

* * * * *

**DUHART, P.J.**

{¶ 1} Appellant, Jamie Madrigal, appeals from a judgment entered by the Lucas

County Court of Common Pleas, denying his motion to compel the state of Ohio to honor

the terms of his plea agreement.  For the reasons that follow, we affirm the judgment of

the trial court.

## Statement of the Case and Relevant Facts

{¶ 2} On April 30, 1995, during an armed robbery of the Pacific Crab House restaurant in Maumee, Ohio, a restaurant employee was ordered to the floor by the perpetrators. Upon his refusal to lie down on the floor, the employee was immediately shot at close range and killed.

{¶ 3} On April 12, 1996, during the course of an armed robbery of a Kentucky Fried Chicken restaurant in Toledo, Ohio, a female manager was shot at point-blank range in the back of the head and killed as she attempted to open the restaurant safe at the command of the robber.

{¶ 4} In case No. CR0199605761 (the "KFC case"), appellant was charged with, and convicted of, murder with a firearm specification and aggravated robbery, for the crimes that occurred at the Kentucky Fried Chicken. A jury recommended that appellant be sentenced to death. The judgment was affirmed by the Supreme Court of Ohio in *State v. Madrigal*, 87 Ohio St.3d 378, 721 N.E.2d 52 (2000). Appellant filed a petition for writ of habeas corpus. A federal district court granted the writ on appellant's claim that his rights under the Confrontation Clause of the Sixth Amendment were denied when the trial court allowed out-of-court statements by a co-defendant who refused to testify at trial. *See Madrigal v. Bagley*, 276 F.Supp.2d 744 (N.D. Ohio 2003), *aff'd* 413 F.3d 548 (6th Cir. 2005).

2.

{¶ 5} On September 9, 2005, counsel was appointed to represent appellant in the retrial of the KFC case. Numerous motions were filed and various hearings and pretrials were held. Retrial was set for January 17, 2007.

{¶ 6} On January 11, 2007, appellant was indicted in case No. CR200701081, for the crimes that occurred at the Pacific Crab House (the "Crab House" case). The following day, appellant withdrew his previous plea of not guilty and entered a plea of guilty in the KFC case. In addition, he entered a plea of guilty, pursuant to *North Carolina v. Alford*, 400 U.S. 25, 27 L.Ed.2d 162, 91 S.Ct. 160 (1970), in the Crab House case. In return for his pleas, the state agreed to dismiss the death penalty specification in the KFC case.

{¶ 7} A sentencing hearing was held. The trial court found that appellant's guilty pleas were made knowingly, voluntarily, and with an understanding of the nature of the charges, the maximum penalties involved, and the effect of the pleas of guilty. In the KFC case, appellant was convicted of aggravated murder with a firearm specification and aggravated robbery. He was sentenced to 20 years to life in prison on the murder charge, 10-25 years in prison on the aggravated robbery charge, and three years in prison for the firearm specification. The sentences were ordered to be served consecutively to one other, for a total minimum term of 33 years, and, further, were ordered to be served consecutive to the sentences imposed in the Crab House case.

{¶ 8} In the Crab House case, appellant was convicted of aggravated murder with a firearm specification, aggravated robbery, and seven counts of kidnapping. At the

3.

sentencing hearing, one count of kidnapping was merged with the murder charge. Appellant was then sentenced to 20 years to life in prison on the murder charge, 10-25 years in prison on the aggravated robbery charge, 10-25 years in prison on each of the remaining six kidnapping charges, and three years in prison for the firearm specification. The sentences were ordered to be served consecutively to one another, for a total minimum term of 93 years. It was further ordered that the sentences in the Crab House case be served consecutively to the sentences in the KFC case, for a total minimum term of 126 years in prison.

{¶ 9} Appellant filed a notice of appeal on March 6, 2007. This court dismissed the appeal as untimely. On December 26, 2007, appellant, pro se, filed a motion for leave to file a delayed appeal. In support of his motion, appellant claimed that the charges brought against him in the Crab House case were "maliciously fabricated and utilized as a tool to maintain [his] original conviction" in the KFC case and to "coerce" his guilty pleas. We granted appellant's motion for leave and appointed counsel. In his brief on the merits, appointed counsel asserted only that the trial court erred in stacking the six kidnapping sentences and that the indictments were defective because they failed to allege a mens rea for the aggravated robbery counts. We found the appeal to be without merit and affirmed the judgment of the trial court. *See State v. Madrigal*, 6th Dist. Lucas Nos. L-07-1417, L-07-1418, 2008-Ohio-6394.

{¶ 10} On February 9, 2009, appellant filed an application to reopen his direct appeal pursuant to App.R. 26(B). On March 10, 2009, we denied his application.

4.

{¶ 11} On January 29, 2010, appellant filed his first motion to withdraw his guilty pleas, in the trial court. Appellant alleged that his sentences were contrary to law, contrary to the ex post facto clause of the U.S. Constitution, and that he was denied effective assistance of trial counsel. The trial court denied the motion without a hearing. Appellant appealed. In *State v. Madrigal*, 6th Dist. Lucas Nos. L-10-142, L-10-143, 2011-Ohio-798, we held that appellant's claims were wholly barred by the doctrine of res judicata. We explained: "claims submitted in support of a Crim.R. 32.1 motion to withdraw plea that could have been raised on direct appeal, but were not raised on direct appeal, are barred by res judicata." *Id.* at ¶ 16, citing *State v. Bryukhanova*, 6th Dist. Fulton No. F-10-002, 2010-Ohio-5504.

{¶ 12} On August 11, 2011, appellant filed a motion to correct illegal sentences. The motion was denied by the trial court on October 27, 2011.

{¶ 13} On October 18, 2016, appellant filed a "Motion to Withdraw Guilty Pleas and/or Motion for New Trial," in the trial court. Appellant's claims for relief were based on what he describes as "recently discovered new, exculpatory evidence." Appellant asserted the he was innocent, that the state fabricated his involvement in the Crab House robbery, and that his trial counsel failed to conduct any investigation or discovery regarding the Crab House case before advising him to plead guilty. In support of his motion, appellant submitted 23 exhibits, including six affidavits of individuals known to appellant at the time of the plea.

{¶ 14} On October 27, 2016, the state filed its opposition to appellant's motions. Shortly thereafter, appellant filed a reply. On January 4, 2017, the trial court issued findings of fact and conclusions of law denying appellant's second Crim.R. 32.1 motion to withdraw plea. The trial court found that the affidavits submitted by appellant were "neither credible nor supportive" of claims of prosecutorial misconduct, ineffective assistance, or actual innocence. In regard to his request for a new trial, the court below found that because appellant entered pleas of guilty, "Crim.R. 33(B) has no application."

{¶ 15} Appellant, pro se, appealed from the January 4, 2017 judgment of the trial court. He asserted seven multi-part assignments of error for review. He alleged prosecutorial misconduct, ineffective assistance of counsel, lack of due process, actual innocence, and failure to comply with Crim.R. 11. Appellant further alleged that his pleas were not knowingly, intelligently, or voluntarily entered. He sought remand and a new trial.

{¶ 16} On February 16, 2018, this court affirmed the trial court's denial of appellant's second motion to withdraw plea, concluding that all of the claims raised by appellant could have been raised on direct appeal and, thus, were barred under the doctrine of res judicata. This court further found that the evidence that appellant claimed as new was either in existence or available to him at the time of the plea, or was inadmissible hearsay.

{¶ 17} On April 2, 2019, appellant filed a motion captioned "MOTION TO VOID/VACATE SENTENCING JUDGMENT" claiming that the sentences for

6.

aggravated murder were imposed contrary to law. Specifically, appellant argued that for each charge of aggravated murder a sentence of "'20 years mandatory incarceration to life in prison' was issued, for which there exists no statutory authority in Ohio's sentencing scheme for aggravated murder" and that his sentences for kidnapping were contrary to law because they were allied offenses and should have been merged. On December 31, 2019, this court determined that both of these claims were barred by the doctrine of res judicata. *See State v. Madrigal*, 6th Dist. Lucas Nos. L-19-1193, L-19-1194, 2019-Ohio-5426.

{¶ 18} On October 15, 2021, appellant filed a motion to compel the state of Ohio to honor the terms of the plea agreement in the Crab House case, and on October 18, 2021, appellant filed a third motion to withdraw plea. The trial court denied both motions on December 8, 2021. An appeal to this court followed, and on April 14, 2022, this court dismissed the appeal as to the portion of the trial court's order denying appellant's motion to withdraw plea, on the grounds that the trial court's ruling on a motion to withdraw a guilty plea rendered after appellant's conviction was affirmed on appeal was void for lack of jurisdiction.

{¶ 19} We consider, herein, the remainder of the trial court's order, which denied appellant's motion to compel the state to honor the terms of the plea agreement.

## Assignments of Error

{¶ 20} Appellants asserts the following assignments of error on appeal:

I.  Appellant is denied [his] Const. Guarantee to Equal Protection of the law and Due Process where a bargain/contract of "33 years to life" specifically stated as being the "maximum * * *" in the journalized plea agreement forms is not honored…[Art. 1, §2; Art. 1, §16; U.S. Amend 5 and 14].

II. The Const. Guarantees to Equal Protection of the Law and Due Process are violated in [a] plea deal/bargain (contract) where the Court, the prosecution, and counsel misunderstood "the maximum penalty [***]" relative to the applicable nondiscretionary statutory authority [of §2929.03]. [Art. 1, §2; Ar. 1, §16; U.S. Amend 5 and 14].

III. Appellant's Const. Guarantee to counsel [in the first instance] is denied upon C/A trial and appellate counsel's failure to understand the nondiscretionary statutory authority applicable to the terms of the plea bargain/contract … [Art. 1 §10; U.S. Amend. 6].

IV. Non-performance of the stated "maximum penalty which can be imposed by law, which is 33 years to life," as set-forth in the plea agreement/contract forms effected a breach of the terms of the plea bargain/contract, as to case CR-07-1081, particularly…in violation of Appellant's Const. Guarantee to Due Process…[Art. 1, §16].

8.

V. Where Appellant has been (1) denied effective assistance of trial and appellate counsel in the first instance; has (2) diligently sought remedy of the underlying issue(s), Pro Se; and (3) has not had such determined on the merits, the application of res judicata is unwarranted and unfairly deprives appellant Due Process...[Art. 1, §10; Art. 1, §16; U.S. Amend 6 and 5, 14].

## Analysis

{¶ 21} Appellant's five assignments of error all involve the underlying claim that the state violated the terms of his plea agreement. In making this assertion, appellant argues that the terms of his plea agreement required him to serve a term of imprisonment of 33 years to life in each case, with a combined term of 66 years to life, rather than 126 years to life, as was imposed by the trial court.

### *Appellant's claims are barred by the doctrine of res judicata*

{¶ 22} "Under the doctrine of res judicata, a final judgment and conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or claimed lack of due process that was raised or could have been raised by the defendant at trial, which resulted in that judgment of conviction, or on appeal from that judgment." *State v. Barcus*, 5th Dist. Licking No. 09-CA-115, 2010-Ohio-122, ¶ 16, citing *State v. Szefcyk*, 77 Ohio St.3d 93, 95, 671 N.E.2d 233 (1996); and *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967). Inasmuch as "appellant would have known that the state breached its agreement with him at his sentencing hearing, he could have brought such a claim in a

9.

direct appeal from his conviction and sentence." *State v. Dodson*, 10th Dist. Franklin No. 16AP-160, 2016-Ohio-5953. Having failed to do so, res judicata bars him from doing it now.

### *Appellant was properly sentenced under the terms of his plea agreement*

{¶ 23} Appellant's claim also fails on its merits. "[P]lea agreements represent bargained-for exchanges whereby defendants limit their legal exposure and prosecutors obtain guaranteed convictions * * *." *State v. Elliott*, 1st Dist. Hamilton No. C-190430, 2021-Ohio-424, ¶ 6. These agreements can be specifically enforced. *Id.* at ¶ 7, citing *Santobello v. New York*, 40 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). When the prosecutor's agreement is "'"part of the inducement or consideration, such promise must be fulfilled.'"" *State v. Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, ¶ 22, quoting *State v. Thomas*, 61 N.J. 314, 323, 294 A.2d 57 (1972), quoting *Santobello* at 262; *see also State v. Soto*, 158 Ohio St.3d 44, 2019-Ohio-4430, 139 N.E.3d 889, ¶ 19 ("[B]ased on principles of contract law[,] * * * when a plea rests on a promise made by the prosecutor, that promise must be fulfilled.") (Internal citation omitted.). If there is a breach, "'[t]he trial court may either allow the negotiated plea to be withdrawn or, alternatively, may require the specific performance of the plea bargain by ordering the prosecution to fulfill its promise.'" *State v. Pinchon*, 11th Dist. Trumbull No. 2019-T-0030, 2019-Ohio-4928, ¶ 12, quoting *State v. Olivarez*, 11th Dist. Lake No. 97-L-288, 1999 WL 262158, *3 (Mar. 31, 1999), citing *Santobello* at 263.

10.

{¶ 24} In the instant case, the state fully complied with the terms of its agreement with appellant. As agreed, once appellant entered his pleas, the state dismissed the death specification in the KFC case.

{¶ 25} As for the sentence that was ultimately imposed, we note that when appellant entered his pleas of guilty, the trial court found that the pleas were made knowingly, voluntarily, and with an understanding of the nature of the charges, the maximum penalties involved and the effect of the pleas of guilty. As indicated above, in the KFC case, appellant was sentenced to serve 20 years to life in prison on the murder charge, 10-25 years in prison on the aggravated robbery charge, and three years in prison for the firearm specification. The sentences were ordered to be served consecutively to each other, for a total minimum term of 33 years, and consecutive to the sentences imposed in the Crab House case.

{¶ 26} In the Crab House case, appellant was sentenced to serve 20 years to life in prison on the murder charge, 10-25 years in prison on the aggravated robbery charge, 10-25 years in prison on each of the six kidnapping charges that did not merge with the murder charge, and three years in prison for the firearm specification. The sentences in the Crab House case were all ordered to be served consecutively to one another, for a total minimum term of 93 years. When added to the total minimum term of 33 years that was imposed in the KFC case, appellants' aggregate minimum term was, in fact, 126 years, a figure which was included in each of the trial court's January 26, 2007 judgment entries relating to each case.

11.

{¶ 27} The state points out that in the plea agreement forms that were signed by appellant prior to sentencing, appellant stated that he understood that "* * * any sentence that the court may impose in this case, being CR1996-5761, may be ordered to be served consecutively with any sentence imposed in CR2007-1081, for a total maximum period of incarceration for both cases totaling 126 years to life and fines totaling $130,000."

{¶ 28} Appellant, on the other hand, asserts that the first paragraph in each of the two plea agreements includes an initial paragraph stating, "I have been advised of the maximum penalty which can be imposed by law, which is 33 years to life with a maximum fine of $35,000.00 * * *." Unfortunately for appellant, although the first page of the plea agreement in the KFC case is in the record before this court, the first page of the plea agreement in the Crab House case is not. "An appellate court can only review claims of error which are based on facts which appear in the record and not on facts as alleged in an appellate brief." *State v. Walker,* 6th Dist. Lucas No. L-98-1210, 1999 WL 278120, *5 ((May 7, 1999).

{¶ 29} Even assuming, without deciding, that appellant's allegations are true, and that both plea agreement documents contained identical initial paragraphs stating "I have been advised of the maximum penalty which can be imposed by law, which is 33 years to life * * *," the inconsistency as related to the Crab House case is properly viewed as nothing more than a harmless typographical error which, in light of all of the other evidence set forth in the record, did not result in any actual misunderstanding of the potential sentence on the part of appellant, or in any unfair prejudice to him, as he was

12.

aware of the plea he was entering.  As set forth at Crim.R. 52(A), which addresses harmless error, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *Id.*; *see also State v. Snyder*, 11th Dist. Ashtabula Nos. 2017-A-0041, 2017-A-0042, 2018-Ohio-2826, ¶ 29 (citing Crim.R. 52(A), court found that typos contained in a plea agreement of no contest referencing "guilty plea" had no prejudicial effect on defendant, who was aware of the plea he was entering). Thus, even assuming appellant's allegations are true, under the harmless error standard, the alleged typographical error does not warrant withdrawal of appellant's plea.

### *Appellant's Equal Protection claims are without merit*

{¶ 30} "Generally, the Equal Protection Clause of the Fourteenth Amendment protects inmates from invidious discrimination based upon race." *Watson v. Campbell*, 6th Cir. No. 98-6132, 1999 WL 801578 (Sep. 28, 1999), at *1; *see also Wolff v. McDonnell*, 418U.S. 539, 556, 41 L.Ed.2d 935, 94 S.Ct. 2963 (1974).  To prove his claim of a denial of Equal Protection, appellant must prove a racially discriminatory intent or purpose in order to prevail in an equal protection case.  *Watson* at *1.  Appellant must show that the state intentionally discriminated against him because of his membership in a protected class. *Id.*  Appellant's brief fails to make any such claim. His Equal Protection claims, therefore, fail.

13.

*Appellant was not denied the effective assistance of counsel, nor has he proven such a claim*

**{¶ 31}** "In order to substantiate a claim of ineffective assistance of counsel, a defendant must demonstrate [both] that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant." *State v. Liskany*, 916 Ohio App.3d 609, 2011-Ohio-4456, 964 N.E.2d 1073, ¶ 174 (2d Dist.), citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment." *State v. Harrington*, 3rd Dist. Logan No. 8-20-37, 2021-Ohio-343, ¶ 20. "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-113-04, 2014-Ohio-259, ¶ 48, quoting *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), citing *Strickland* at 691. "' A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142, and citing *Strickland* at 694.

**{¶ 32}** In light of our earlier discussion, we conclude that appellant's counsel was not deficient for failing to object to a breach of the plea agreement where there was none. As stated by the Supreme Court of Ohio, "Counsel is certainly not deficient for failing to raise a meritless issue." *State v. Taylor*, 78 Ohio St.3d 15, 31, 676 N.E.2d 82 (1997).

14.

Furthermore, appellant has not demonstrated that even if his attorney had at sentencing clarified the agreement or objected to the prosecutor's statements, the trial court would have sentenced him differently. Consequently, appellant has not demonstrated prejudice.

{¶ 33} For all of the foregoing reasons, appellant's five assignments of error are found not well-taken, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.         _____
                                            JUDGE
Christine E. Mayle, J.

Myron C. Duhart, P.J.         _____
CONCUR.                                        JUDGE

                                    _____
                                         JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.