[Cite as *State v. Deloney*, 2019-Ohio-5213.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190372 |
| | | TRIAL NO. B-1303726 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| JOHN DELONEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed and Cause Remanded

Date of Judgment Entry on Appeal: December 18, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Faulkner & Tepe, LLP*, *A. Norman Aubin* and *Wilkes R. Ellsworth,* for Defendant-Appellant.

**MOCK, Presiding Judge.**

{¶1} Defendant-appellant John Deloney has filed an interlocutory appeal from the decision of the Hamilton County Court of Common Pleas denying his motion to preclude the death penalty as a sentencing option on double-jeopardy grounds. We find no merit in Deloney's sole assignment of error, and we affirm the trial court's judgment.

### I. Factual Background

{¶2} On June 21, 2013, Deloney was indicted for aggravated murder under R.C. 2903.01(B), with accompanying death-penalty and firearm specifications. He was also indicated for aggravated robbery under R.C. 2911.01(A)(1), with an accompanying firearm specification.

{¶3} Deloney's counsel subsequently filed a "Motion for a Suggestion of Mental Retardation." We note that the Ohio Supreme Court now uses the term "intellectually disabled" rather than "mentally retarded." *See State v. Ford*, Slip Opinion No. 2019-Ohio-4539, ¶ 44. Therefore, we will also use the term "intellectually disabled."

{¶4} Despite the filing of the motion, Deloney and his family refused to cooperate with all evaluations and testing. Eventually, the trial court held a hearing using the evidence the parties had been able to gather without Deloney's cooperation. After the hearing, the trial court found that Deloney was intellectually disabled. Therefore, it held that subjecting him to the death penalty would constitute cruel and unusual punishment under *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011.

2

{¶5} The state appealed the trial court's decision to this court. In *State v. Deloney*, 1st Dist. Hamilton No. C-150619, 2017-Ohio-9282, we reversed the trial court's decision, holding that Deloney had failed to meet his burden of proof to show that he was intellectually disabled. We remanded the cause to the trial court for further proceedings. *Id.* at ¶ 30. The Supreme Court declined to accept the case for review. *See State v. Deloney*, 152 Ohio St.3d 1481, 2018-Ohio-1990, 98 N.E.3d 295.

{¶6} On remand, Deloney filed a "Motion to Preclude the Death Penalty," on double-jeopardy grounds. He argued that the trial court's decision finding that he was intellectually disabled was essentially an acquittal on the issue of whether the state could impose the death penalty. The trial court denied the motion. It found that the *Atkins* determination was unrelated to factual guilt and innocence, and therefore, it was not an acquittal for purposes of the double-jeopardy clause. The court also found that under the law-of-the-case doctrine, it was required to follow our mandate and proceed to trial.

{¶7} Deloney filed a timely appeal from the trial court's judgment. We note that the Ohio Supreme Court has held that the denial of a motion to dismiss on double-jeopardy grounds is a final, appealable order. *See State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 60-61.

{¶8} In his sole assignment of error, Deloney contends that the trial court erred in overruling his motion to dismiss the death-penalty specifications on double-jeopardy grounds. He argues that the law-of-the-case doctrine did not preclude the trial court from considering the double-jeopardy issue. He also argues that the trial court made a factual finding that he was intellectually disabled, which precluded the imposition of the death penalty and served as an "acquittal" on the death-penalty specifications. Therefore, regardless of our reversal of the trial court's previous

3

decision, trying him on the specifications would twice place him in jeopardy, and as a result, the state is precluded from seeking the death penalty. This assignment of error is not well taken.

## II. Law-of-the-Case Doctrine

{¶9} First, the law-of-the-case doctrine did not bar the trial court from deciding the double-jeopardy issue. Under the law-of-the-case doctrine, the decision of a reviewing court in an action remains the law of that case on the legal questions involved for all subsequent proceedings in that case. *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984); *Vonderhaar v. Cincinnati*, 191 Ohio App.3d 229, 2010-Ohio-6289, 945 N.E.2d 603, ¶ 13 (1st Dist.). The law-of-the-case doctrine does not apply when the subsequent proceedings involve different evidence or different legal issues. *Vonderhaar* at ¶ 13.

{¶10} In our previous decision, we decided only that Deloney had failed to meet his burden to show that he was intellectually disabled, and therefore, ineligible for the death penalty. Whether the state is precluded by the Double Jeopardy Clause from seeking the death penalty is a separate issue that we did not decide, and thus, it is outside of our mandate. Therefore, the trial court was not barred by the law-of-the-case doctrine from considering the double-jeopardy issue.

## III. Double Jeopardy

{¶11} "The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal." *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 139, quoting *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). The Double Jeopardy Clause

ordinarily does not prohibit the imposition of an increased sentence on remand from an appeal. *Hancock* at ¶ 139. But in a line of cases beginning with *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the United States Supreme Court held that double-jeopardy principles may apply to bar a capital sentence on retrial. *Hancock* at ¶ 140.

### A. The United States Supreme Court Cases

{¶12} In *Bullington*, the jury originally returned a verdict rejecting the death penalty and imposing a sentence of life imprisonment without parole eligibility for 50 years. Subsequently, the trial court granted the defendant's motion for a new trial on grounds related to statutory deficiencies in jury selection. The court refused to let the state seek the death penalty on retrial, and the state sought a writ of prohibition allowing it to seek the death penalty, which the Supreme Court of Missouri granted.

{¶13} The United States Supreme Court reversed that decision. It held that the Double Jeopardy Clause applies to capital proceedings where the proceedings "have the hallmarks of the trial on guilt or innocence." *Bullington* at 439. It identified several aspects of Missouri's sentencing proceeding that resembled a trial, including the requirement that the prosecution must prove certain statutorily defined criteria beyond a reasonable doubt to support a death sentence. *Id.* at 438. It stated that Missouri law "*explicitly requires* the jury to determine whether the prosecution has 'proved its case.' " (Emphasis in original.) *Id.* at 444.

{¶14} Thus, the jury's decision to impose a life sentence meant that "the jury has already acquitted the defendant of whatever was necessary to impose the death sentence." *Id.* at 445. For that reason, the life sentence deserved the same degree of finality that an acquittal of the offense itself would have been given. *Id.* at 445-446.

Nevertheless, in *Bullington*, it was not the mere imposition of the life sentence that raised the double-jeopardy bar. *Sattazahn v. Pennsylvania*, 537 U.S. 101, 107, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003). An "acquittal" at a trial-like sentencing phase, rather than the mere imposition of a life sentence, is required to give rise to double-jeopardy protections. *Bullington*, 451 U.S. at 446, 101 S.Ct. 1852, 68 L.Ed.2d 270.

{¶15} Subsequently, the Court decided *Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984), which involved a death sentence imposed by a judge rather than a jury. In that case, the trial court had found that no statutory aggravating circumstances existed, which precluded the court from imposing the death penalty under Arizona law. The state appealed, and the Supreme Court of Arizona held that the trial court had erred in its interpretation of one of the statutory aggravating circumstances. It remanded the cause for a new sentencing procedure, which produced a death sentence.

{¶16} In reversing the Arizona court's decision, the United States Supreme Court stated that the "double jeopardy principle relevant to [the defendant's] case is the same as that invoked in *Bullington*: an acquittal on the merits by the sole decision maker in the proceeding is final and bars retrial on the same charge." *Id.* at 211.

> *Rumsey* thus reaffirmed that the relevant inquiry for double-jeopardy purposes was not whether the defendant received a life sentence the first time around, but rather whether a first life sentence was an 'acquittal' based on findings sufficient to establish legal entitlement to the life sentence-*i.e.*, findings that the government failed to prove one or more aggravating circumstances beyond a reasonable doubt.

*Sattazahn* at 108.

6

{¶17} The Supreme Court reached a different result in *Poland v. Arizona* 476 U.S. 147, 106 S.Ct. 1749, 80 L.Ed.2d 123 (1986). That case involved two defendants convicted of first-degree murder and sentenced to death. On appeal, the Arizona Supreme Court set aside the convictions because of a jury-room discussion of evidence not admitted at trial. It also found that there was insufficient evidence to support the one aggravating circumstance found by the trial court. But, it found there was sufficient evidence to support another aggravating circumstance, which the trial court did not believe was proved. The Court remanded the case for a new trial. The defendants were again convicted of murder and sentenced to death.

{¶18} The Supreme Court decided that in those circumstances, the Double Jeopardy Clause was not violated. It distinguished *Bullington* and *Ramsey* stating that "[a]t no point during the [defendants'] first capital sentencing hearing and appeal did either the sentencer or the reviewing court hold that the prosecution had 'failed to prove its case' that [defendants] deserved the death penalty." *Id.* at 154. It went on to state that "[w]e reject the fundamental premise of [defendants'] argument, namely, that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an 'acquittal' of that circumstance for double jeopardy purposes."

{¶19} To the contrary, the defendants had been convicted at the first trial and sentenced to death. "This concern with protecting the finality of acquittals is not implicated when, as in these cases, a defendant is sentenced to death, *i.e.*, 'convicted.' There is no cause to shield the defendant from further litigation; further litigation is the only hope he has." *Id.* at 156.

{¶20} Finally, the Court decided *Sattazahn*, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588, in which there was a hung jury in the sentencing phase of the

proceedings. As required by Pennsylvania law, the trial court discharged the jury and imposed a life sentence. An appellate court concluded that the trial court had erred in instructing the jury in the penalty phase of the proceedings. It reversed the defendant's murder conviction and remanded the matter for a new trial. At the second trial, the jury convicted the defendant and sentenced him to death. The Pennsylvania Supreme Court affirmed the guilty verdict and death sentence.

{¶21} The United States Supreme court affirmed. It stated that "[u]nder the *Bullington* line of cases * * *, the touchstone for double-jeopardy protection in capital-sentencing proceedings is whether there has been an 'acquittal.' [The defendant] here cannot establish that the jury or the court 'acquitted' him during his first capital-sentencing proceeding." *Id.* at 109. It noted that because the jury was deadlocked, "it made no findings with respect to the alleged aggravating circumstance. That result—or more appropriately, that non-result—cannot fairly be called an acquittal 'based on findings sufficient to establish legal entitlement to the life sentence.' " *Id.,* quoting *Rumsey*, 467 U.S. at 211, 104 S.Ct. 2305, 81 L.Ed.2d 164.

{¶22} The Court also stated that the judge's entry of a life sentence was not an acquittal because the judge had no discretion to fashion the sentence once it found that the jury was deadlocked. The judge made no findings and resolved no factual matters. "Since judgment is not based on findings which resolve some factual matter, it is not sufficient to establish a legal entitlement to a life sentence. A default judgment does not trigger a double jeopardy bar to the death penalty upon retrial." *Id.* at 109-110, quoting *Commonwealth v. Sattazahn*, 563 Pa. 533, 548, 763 A.2d 359 (2000).

### B. Ohio Supreme Court Cases

{¶23} We note that very recently the Ohio Supreme Court revisited the issue of what standard is applied in an *Atkins* hearing to determine whether an individual is intellectually disabled. *See Ford*, Slip Opinion No. 2019-Ohio-4539, at ¶ 42-100. But we need not discuss that case because it does not affect our analysis in this case.

{¶24} The Ohio Supreme Court first discussed the double-jeopardy issue in *Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, in which the jury recommended the death penalty. But before sentencing, the trial judge determined that certain guilt-phase exhibits were improperly sent to the jury room during the penalty-phase deliberations. The trial court, without weighing the aggravating and mitigating circumstances, declared a mistrial of the penalty phase and sentenced the defendant to life in prison. The court of appeals determined that the trial court had improperly declared a mistrial. It vacated the life sentence and remanded for resentencing. On remand, the trial court determined that the aggravating circumstances outweighed the mitigating factors and sentenced the defendant to death.

{¶25} The Ohio Supreme Court discussed the *Bullington* line of cases. It stated that neither the judge nor the jury had found that the prosecution had failed to prove its case that the defendant deserved the death penalty. The jury did not acquit, and the trial judge, in granting the mistrial, made clear that he was not deciding if the death penalty was appropriate. The Ohio Supreme Court used strong language about acquittal, stating, "Only a finding that the state has failed to prove its case for death constitutes an 'acquittal of the death penalty' for double-jeopardy purposes."

*Hancock* at ¶ 150, citing *Sattazahn*, 537 U.S. at 117, 123 S.Ct. 732, 154 L.Ed.2d 588 (O'Connor, J., concurring in part and concurring in judgment).

{¶26} The Ohio Supreme Court again addressed the issue in *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534. In that case, the defendant was convicted by a jury and sentenced to death. Subsequently, he obtained federal habeas relief from his death sentence because of a biased juror, requiring a resentencing. The version of R.C. 2929.06(B) in effect at the time required the trial court to empanel a new jury and conduct a fresh penalty hearing, but that provision was enacted after the murder of which the defendant had been convicted and before he obtained habeas relief. The trial court held that it could not retroactively apply the statute, and therefore, the defendant was ineligible for the death penalty.

{¶27} Amicus curiae Ohio Association of Criminal Defense Lawyers ("OACDL") contended that the retroactive application of R.C. 2929.06(B) would violate the Double Jeopardy Clause. OACDL argued that the statute created an irrebuttable presumption that the first jury, in the absence of the biased juror, would not have recommended death, and therefore, a life sentence should have been imposed. It argued that it was the equivalent of an acquittal that precluded reinstatement of that punishment.

{¶28} The Ohio Supreme Court rejected that argument, finding that it rested on a misunderstanding of *Bullington*. It stated that the cases decided since *Bullington* make clear that an acquittal at a trial-like sentencing phase is required to give rise to double-jeopardy protections. *White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 535, at ¶ 67. It went on to state that "[m]oreover, to raise a double-jeopardy bar to resentencing, an acquittal *on the merits* is required." (Emphasis in original.) *Id.* Because neither a judge nor a jury had found that the prosecution had

failed to prove its case that the defendant deserved the death penalty, the court rejected the double-jeopardy argument.

### C. Application

{¶29} This case presents a different fact scenario than any of these cases. Neither the parties nor this court could find any case applying double-jeopardy principles where a trial court had found the defendant's intellectual disability precluded the imposition of the death penalty and the state had appealed. Nevertheless, our review of the United States Supreme Court and Ohio Supreme Court cases shows that a finding that a defendant was intellectually disabled was not the functional equivalent of an acquittal.

{¶30} First, there was no "trial-like sentencing phase." It is true, as Deloney argues, that the *Atkins* hearing in this case has some indicia of a trial-like proceeding, such as opening statements, witnesses called by both sides, application of the rules of evidence, and closing arguments. Nevertheless, the hearing was significantly different than a true death-penalty-phase-sentencing hearing.

{¶31} Here, there has been no sentencing. Deloney has not even been tried, much less found guilty. Further, no evidence was presented regarding the aggravating factors necessary for the imposition of the death penalty or any mitigating factors, other than Deloney's alleged intellectual disability. *See* R.C. 2929.04. Deloney bore the burden at the *Atkins* hearing to prove by a preponderance of the evidence that he was intellectually disabled. *See Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, at ¶21. In a capital-sentencing hearing, the state bears the burden to prove beyond a reasonable doubt that the

aggravating factors outweigh the mitigating factors. *State v. Stumpf*, 32 Ohio St.3d 95, 102, 512 N.E.2d 598 (1987).

{¶32} Most importantly, there was no "acquittal." In *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), the United States Supreme Court stated that a defendant is acquitted only when "the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged." *Id.* at 97, citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977).

{¶33} In *Scott*, the trial court dismissed two counts of an indictment because of prejudice due to preindictment delay. The government appealed and the appellate court dismissed the appeal, finding that the Double Jeopardy Clause barred further prosecution. The United States Supreme Court reversed that court's decision. It stated that an appeal is barred only if the government's evidence "was legally insufficient to sustain a conviction." *Scott* at 97, quoting *Martin Linen Supply Co.* at 572.

{¶34} Further, as we have previously stated, the Ohio Supreme Court has held that "[o]nly a finding that the state has failed to prove its case for death constitutes an 'acquittal of the death penalty' for double-jeopardy purposes." *Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, at ¶ 150. An acquittal in the guilt phase would occur if the state's evidence was legally insufficient to prove the alleged aggravating factors or if jury found that the state had failed to prove the aggravating factors.

{¶35} "Ohio requires only one factual decision at the penalty stage, i.e., whether the State has proven beyond a reasonable doubt that the aggravating factors

12

of which the offender has been found guilty outweigh the mitigating factors." *State v. Arnold*, 2013-Ohio-5336, 2 N.E.3d 1009, ¶ 48 (2d Dist.). Thus, the state's evidence would be legally insufficient to support the death penalty and constitute an acquittal in the penalty phase if the state failed to prove beyond a reasonable doubt that the aggravating factors outweighed the mitigating factors. In this case, there were none of these determinations. The guilt phase has not even occurred.

{¶36} We agree with the trial court when it stated:

As it was in this case, an *Atkins* hearing and finding of intellectual disability is unrelated to the factual guilt or innocence of the defendant. Rather, it is a factual evaluation of whether or not Deloney qualifies as intellectually disabled to preclude the death penalty under the Eighth Amendment. The trial court does not make any determination of guilt or innocence, but proceeds entirely on the Defendant's request to avoid the death penalty based on the constitutional prohibition against cruel and unusual punishment. Because the trial court's *Atkins* determination was unrelated to factual guilt or innocence, it is not an acquittal for purposes of the application of the Double Jeopardy Clause.

{¶37} The Double Jeopardy Clause protects against three distinct wrongs: (1) a second prosecution for the same offense after an acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *State v. Soto*, Slip Opinion No. 2019-Ohio-4430, ¶ 12. None of these concerns are implicated here. Deloney has not been tried on the aggravated-murder charge or on the death-penalty specification. Thus, he has not been put in

13

jeopardy and the Double Jeopardy Clause does not preclude a trial on the guilt or penalty phases or the imposition of the death penalty.

**{¶38}** Consequently, we hold that the trial court did not err in overruling Deloney's motion to preclude the death penalty on double-jeopardy grounds. We overrule his sole assignment of error, affirm the trial court's judgment, and remand the cause to the trial court for further proceedings.

Judgment affirmed and cause remanded.

**MYERS, J.,** concurs.
**CROUSE, J.,** concurs separately.

**CROUSE, J.,** concuring separately.

**{¶39}** I concur in the majority opinion, but I write separately to emphasize that Deloney has not been put twice in jeopardy because he has not been found guilty and he has not been sentenced. In all of the cases cited by Deloney in support of his argument that the trial court's *Atkins* determination was an "acquittal of the death penalty," the defendant had been found guilty and had been sentenced.

**{¶40}** Deloney contends that the issue in this case is directly analogous to the situation where a court finds a defendant not guilty by reason of insanity ("NGRI"), which has been found to be an "acquittal." But an NGRI finding necessarily requires a finding of guilt on the underlying crime. 2 *Ohio Jury Instructions*, CR Section 421.29(3) (Rev. May 2019).

> *If you find that the state has proved beyond a reasonable doubt all the essential elements of any one of the offenses that have been described, then you must find the defendant guilty of the offense charged or such lesser included offense according to your finding; unless you further find by a preponderance or greater weight of the*

14

*evidence that the defendant was insane at the time of the commission of the act, in which event your verdict must be not guilty by reason of insanity.*

(Emphasis added.) *Id.*

{¶41} Ohio's *Atkins* procedure is better compared to a criminal competency proceeding than a sentencing proceeding or an NGRI finding. As set forth in Tobolowsky, *Atkins Aftermath: Identifying Mentally Retarded Offenders and Excluding Them From Execution*, 30 J.Legis. 77 (2003):

In a manner similar to a competency determination, an *Atkins* proceeding requires an assessment of whether proffered facts satisfy the legal definition of mental retardation adopted, which, in turn, automatically determines a capital defendant's eligibility for or exclusion from the death penalty—again without regard to any individualized assessment of the defendant's culpability for the underlying crime. In this connection, the *Atkins* Court explicitly found, as part of its findings regarding national consensus, that "our society views mentally retarded offenders as categorically less culpable than the average offender." Unlike the role that evidence of mental retardation plays as a mitigating factor balanced against aggravating factors in a capital sentencing determination of the requisite individualized culpability necessary for the imposition of a death sentence, the *Atkins* mental retardation determination simply removes a defendant from that determination because the Court has already made the determination that a mentally retarded offender lacks the requisite culpability to be executed. *In this connection, mental*

15

*retardation is not a sentencing issue--it is an eligibility for sentencing issue.* Viewed in this way, a judicial pretrial determination of whether proffered facts satisfy the legal definition of mental retardation and thus whether a case may proceed as a capital prosecution appears very similar to a judicial pretrial determination of whether proffered facts satisfy the legal standard of criminal competency and thus whether a criminal prosecution may proceed.

(Emphasis added.) *Id.* at 105.

{¶42} For the reasons set forth in the majority opinion, and because in Ohio, a trial court's *Atkins* determination is a threshold determination of whether a defendant is eligible for the death penalty and not an acquittal of the death penalty, I concur.

Please note:
The court has recorded its own entry this date.