[Cite as *State v. Soto*, 2025-Ohio-4517.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
PUTNAM COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

TRAVIS SOTO,

    DEFENDANT-APPELLANT.

CASE NO. 12-24-06

OPINION AND
JUDGMENT ENTRY

Appeal from Putnam County Common Pleas Court
Criminal Division
Trial Court No. 2016 CR 00057

Judgment Affirmed

Date of Decision: September 29, 2025

APPEARANCES:

    *Randall L. Porter* and *Kandra Roberts* for Appellant

    *Gary L. Lammers* for Appellee

**MILLER, J.**

{¶1} Defendant-Appellant, Travis Soto ("Soto"), appeals from the June 6, 2024 order issued by the Putnam County Court of Common Pleas denying his motion to enforce his plea agreement and dismiss this case. The case stems from an incident in 2006 where Soto's son died. At the time, Soto claimed he accidentally hit his son with an all-terrain vehicle ("ATV"). Later that year, he entered into a plea agreement with the State in which he pleaded guilty to child endangering and the State dismissed an additional charge of involuntary manslaughter. In 2016, years after Soto had served the resulting prison sentence in its entirety, Soto voluntarily appeared at the sheriff's office and admitted he actually had beaten his son to death and staged the ATV accident. The State subsequently indicted him on additional charges arising out of the same incident, including aggravated murder.

{¶2} Soto's current appeal involves whether his 2006 plea agreement barred the State from bringing the additional charges against him in 2016. Soto argues there was sufficient evidence in 2006 to put the State on notice that it needed to reserve the right to bring any additional charges in the future as part of the plea agreement, pursuant to the Supreme Court of Ohio's decision in *State v. Carpenter*, 68 Ohio St.3d 59 (1993). Because the State did not make such a reservation in the plea agreement, Soto claims he had a reasonable expectation of finality for his criminal conduct when he entered into the 2006 plea agreement. Therefore,

according to Soto, the trial court erred in denying his motion to enforce the plea agreement and dismiss the indictment.

{¶3} We affirm the trial court's decision to deny Soto's motion for two independent reasons. First, the circumstances for applying the principles from *Carpenter* on which Soto's appeal relies are absent from the peculiar facts and scenario here. During the initial investigation of the child's death, Soto voluntarily chose to make statements to law enforcement that were lies and false narratives, which led to faulty evidence and the specific charges brought against him in 2006. At the time Soto pleaded to the initial charges, the prosecutor did not know the facts on which the current charges are based and Soto did not have a reasonable expectation that his plea agreement would conclude the matter and foreclose any additional charges arising out of the same incident. Accordingly, the State did not need to reserve the right to file additional charges as part of the plea agreement. Second, Soto breached the plea agreement, so he is barred from attempting to enforce it against the State.

## I.    FACTS AND PROCEDURAL HISTORY

{¶4} The trial court made the following findings, which Soto does not dispute.

A.  On January 23, 2006, Travis Soto's son, [J.S.], died.

B.  Soto represented to law enforcement that his son was struck by an ATV.  Soto did make multiple statements to authorities.  Those statements included:

1. Soto accidentally ran over [J.S.] with the ATV after turning around the corner of a building, and

2. [J.S.] died after he fell off [Soto's] ATV when they were riding on the railroad tracks.

C. The Lucas County Coroner's Office ruled that [J.S.]'s injuries were consistent with an ATV accident.

D. [On] March 31, 2006, the Putnam County Grand Jury returned a two-count indictment against Soto. The first count charged him with involuntary manslaughter in violation of R.C. [2903.04(A)], a first-degree felony. The count alleged that Soto caused the death of his son as the proximate cause of committing the felony offense of child endangering. The second count charged him with child endangering, a third-degree felony, in violation of R.C. 2929.22(A). The count alleged that Soto created a substantial risk to the health or safety of his son, who was less than the age of eighteen, by striking him with the ATV resulting in serious physical harm to said child.

E. [On] July 6, 2006, Soto entered a plea agreement with the State of Ohio. Soto entered a plea of guilty to the second count of the indictment being child endangering, a third-degree felony. In exchange for that plea of guilty, the State of Ohio dismissed count one, Involuntary Manslaughter.

F. On August 31, 2006, the trial court conducted the sentencing hearing. After Soto declined to make a statement, the trial court conducted a lengthy examination of Soto. The court addressed the evidence that it felt supported more serious charges.

G. The Prosecution did not seek leave to move to vacate the plea after the court's examination of Soto.

H. The Court imposed a sentence of five years, a fine of ten thousand dollars, and post-release control. Soto completed his prison sentence of five years and completed his term of post-release control.

I. After having been out of prison and employed for five years, on July 25, 2016, Soto voluntarily appeared (without being the focus of any investigation) at the Putnam County Sheriff's Office and indicated that he wanted to provide a truthful statement about what

happened to his son in 2006.  He admitted to beating his son to death and staging the ATV accident.

J.  The Lucas County Coroner's original 2006 report was then reviewed by a pediatric abuse specialist who concluded that the cause of death was by multiple blunt force trauma due to the actions of Soto beating his son.

K.  The pediatric abuse specialist concluded that due to Soto's misrepresentations to the Putnam County Sheriff's Office in 2006 it 'led to the reasonabl[e] yet faulty conclusions of the Lucas County Coroner.'

L.  On August 15, 2016, the Putnam [County] Grand Jury indicted Travis Soto for the death of his son.  The charges included:

    1.  Count One, Aggravated Murder in violation of [R.C.] 2903.01(C) . . .

    2.  Count Two, Murder in violation of [R.C.] 2903.02(B) . . .

    3.  Count Three, Felonious Assault in violation of [R.C.] 2903.11(A)(1) . . .

    4.  Count Four, Kidnapping in violation of [R.C.] 2905.01 . . .

    5.  Count Five, Tampering with Evidence in violation of [R.C.] 2921.12(A)(1) . . . .

M.  On August 18, 2016, Soto pled not guilty to all the counts contained within the indictment.

N.  On October 11, 2016, Soto filed a Motion to Dismiss on the Grounds of Double Jeopardy . . . .

O.  . . . [T]he trial court overruled the motion to dismiss.

P.  Soto appealed to the Third Appellate District.  That Court, in a two-to-one opinion, reversed the decision of the trial court.

Q.  The State sought discretionary review from the Supreme Court of Ohio . . . .

R. The Supreme Court [of Ohio] accepted jurisdiction . . . [and] reversed the judgment of the Third Appellate District.[1] . . .

S. On February 27, 2020, Soto timely appealed to the United States Supreme Court . . . [which] denied certiorari . . . .

T. On January 21, 2021, Soto sought a writ of habeas corpus pursuant to 28 U.S.C. § 2241 urging the District Court to preclude the State from twice trying him for the same crime in violation of the Double Jeopardy Clause . . . The district court . . . denied the petition. . . .

U. Soto appealed to the Sixth Circuit [Court of Appeals]. . . .

V. The Sixth Circuit panel affirmed the decision of the District Court. . . .

W. Upon remand, defendant Soto, through counsel, has filed a motion to dismiss based upon the argument that the plea agreement being contractual in nature binds the State of Ohio from pursuing [the] current indicted charges.

(June 6, 2024 Order at 2-5).

{¶5} The plea agreement does not specifically preclude the prosecutor from bringing additional charges regarding the incident, and it also does not say the State reserves the right to bring such additional charges. In other words, it is silent concerning the prosecutor's ability to bring additional charges regarding the incident. Concerning the State's obligations, the plea agreement simply states: "No promises have been made except as part of this plea agreement stated entirely as follows: State silent as to sentence; Count 1 dismissed."

---

[1] The Supreme Court of Ohio held that, "because the involuntary-manslaughter charge was dismissed prior to the empaneling of a jury, jeopardy never attached to that charge. Because of this, the double-jeopardy prohibition does not prevent the state from prosecuting Soto for murder or aggravated murder." *State v. Soto*, 2019-Ohio-4430, ¶ 3.

{¶6} On January 26, 2024, Soto filed the "Motion to Enforce His 2006 Plea Agreement With the State of Ohio and to Dismiss the Case." The motion was premised on *Carpenter* and its progeny. *Carpenter* held:

> The state cannot indict a defendant for murder after the court has accepted a negotiated guilty plea to a lesser offense and the victim later dies of injuries sustained in the crime, unless the state expressly reserves the right to file additional charges on the record at the time of the defendant's plea.

*Carpenter*, 68 Ohio St.3d 59 at syllabus. In his motion, Soto asserted that, when a defendant enters into a plea agreement and has a reasonable expectation that his plea will resolve all present and future charges, the State is barred from later bringing charges unless it specifically reserves the right to do so. According to Soto, the current charges against him must be dismissed—by enforcing the plea agreement—because his plea was the product of a negotiated agreement, the agreement resolved all pending charges, the State did not reserve the right to bring additional charges, and the current charges arise out of the same incident. Soto argued that, unhappy with the terms of the plea agreement, the State is trying to break the agreement by bringing the current charges, but "*Carpenter* and its progeny prevent that from happening." (Motion to Enforce Plea Agreement at 20).

{¶7} In its response to the motion, the State argued that Soto did not have a reasonable expectation of finality in the plea agreement, Soto may have breached the plea agreement, and the State should not be estopped from pursuing accurate charges after Soto's lies were uncovered. The State also distinguished *Carpenter*

by asserting it only applies where, at the time of the plea, the prosecutor had knowledge of all the offenses.

{¶8} On June 6, 2024, the trial court issued its order denying Soto's motion. It analyzed Crim.R. 48, decided each party received what it bargained for, distinguished *Carpenter*, and rejected Soto's contention that the State should have known back in 2006 that he was lying and that the State had enough evidence at that time to charge him with murder. This appeal followed.

## II. ASSIGNMENT OF ERROR

{¶9} Soto raises a single assignment of error for our review:

**The trial court erred when it overruled Appellant's Motion to Enforce the 2006 Plea Agreement and Dismiss the Indictment.**

## III. DISCUSSION

### A. The Trial Court's Order Is a Final and Appealable Order

{¶10} As a preliminary matter, we address whether the trial court's June 6, 2024 order is a final, appealable order. The State argues it is not. We disagree and, therefore, decline to dismiss the appeal for lack of jurisdiction.

{¶11} "Appellate jurisdiction of Ohio's courts of appeals is limited." *Mill Creek Metro. Park Dist. Bd. of Commrs. v. Less*, 2023-Ohio-2332, ¶ 8. "Article IV, Section 3(B)(2) of the Ohio Constitution provides that appellate courts have jurisdiction to review final orders and judgments." *Crown Servs., Inc. v. Miami Valley Paper Tube Co.*, 2020-Ohio-4409, ¶ 13. "R.C. 2953.02 authorizes appellate

courts to review the judgment or final order of a trial court in a criminal case." *State v. Anderson*, 2014-Ohio-542, ¶ 29. "To determine whether the order issued by the trial court in a criminal proceeding is a final, appealable order, appellate courts must apply the definitions of 'final order' contained in R.C. 2505.02." *Id.*

{¶12} "The general rule is that an order denying a defendant's motion to dismiss an indictment is an interlocutory order that is not immediately appealable." *State v. Anderson*, 2018-Ohio-3051, ¶ 4 (8th Dist.). However, there are limited circumstances in which such an order may qualify as a final, appealable order pursuant to R.C. 2505.02. *Id.* at ¶ 1, 5 (involving an order denying the defendant's motion to dismiss the indictment where, based on *Carpenter*, defendant argued the indictment was barred by his guilty plea); *see also Anderson*, 2014-Ohio-542, at ¶ 40-59 (involving an order denying the defendant's motion to dismiss the indictment on double-jeopardy grounds).

{¶13} The statute at R.C. 2505.02(B) defines a final order and provides, in relevant part:

> An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
>
> . . .
>
> (4) An order that grants or denies a provisional remedy and to which both of the following apply:
>
> > (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

. . .

R.C. 2505.02(B)(4).

{¶14} In accordance with the statute, we engage in a three-prong analysis to determine whether the June 6, 2024 order was a final and appealable order. *See also Anderson*, 2014-Ohio-542, at ¶ 42-59. First, regarding whether the order denied a provisional remedy, the statute provides:

'Provisional remedy' means a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, suppression of evidence, a prima-facie showing pursuant to [R.C. 2307.85 or 2307.86], a prima-facie showing pursuant to [R.C. 2307.92], or a finding made pursuant to [R.C. 2307.93(A)(3)].

R.C. 2505.02(A)(3). "The statutory phrase 'including, but not limited to' means that the examples expressly given are 'a *nonexhaustive* list of examples.'" (Emphasis in original.) *Anderson*, 2014-Ohio-542, at ¶ 45, quoting *State v. Muncie*, 91 Ohio St.3d 440, 448, 2001-Ohio-93 (2001). An ancillary proceeding under the statute is one that is attendant upon or aids another proceeding. *Id.* at ¶ 47.

{¶15} In *Anderson*, the Supreme Court of Ohio found that a motion to dismiss an indictment on double-jeopardy grounds is attendant upon the underlying prosecution because it is consequent, concomitant, associated, and related to the prosecution. *Id.* at ¶ 49. The Court further explained:

[A] motion to dismiss on double-jeopardy grounds is 'separate from and entirely collateral to the substantive issues at trial. The defendant's right not to be tried has nothing to do with guilt or innocence. The proceeding on the issue is independent of the main trial * * *. Such a position is entirely consistent with the court's willingness to broadly define what constitutes an ancillary hearing and thus a 'provisional remedy' under R.C. 2505.02(A)(3).

*Id.* at ¶ 50, quoting John Paul Sellers III, *Between a Rock and a Hard Place: Does Ohio Revised Code Section 2505.02 Adequately Safeguard a Person's Right Not to Be Tried?*, 28 Ohio N.U.L.Rev. 285, 299 (2002).

{¶16} The same holds true here. Soto's motion to dismiss the indictment is akin to an action to enforce a contract. It has nothing to do with his guilt or innocence, yet is attendant upon the underlying prosecution. *Id.* at ¶ 49; *see also Anderson*, 2018-Ohio-3051, at ¶ 7 (8th Dist.) ("like a motion to dismiss on double jeopardy grounds, the motion that [defendant-appellant] filed in this case grew out of the prosecution and was 'attendant' upon the underlying prosecution").

{¶17} Second, we find that a decision on the motion to dismiss the indictment based on a prior plea agreement "in effect determines the action with respect to the provisional remedy" because it either permits or prohibits the subsequent prosecution. R.C. 2502.02(B)(4)(a); *see also Anderson*, 2018-Ohio-3051, at ¶ 7 (8th Dist.); *Anderson*, 2014-Ohio-542, at ¶ 52 ("a decision on a motion to dismiss on double-jeopardy grounds determines the action because it permits or bars the subsequent prosecution"). Here, the trial court made its decision on the provisional remedy—it rejected Soto's argument and instead permitted the prosecution. There

was nothing further for the trial court to decide with respect to the provisional remedy. *See In re Special Docket No. 73958*, 2007-Ohio-5268, ¶ 29.

**{¶18}** Third, regarding whether Soto "would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action," we find this prong satisfied as well. R.C. 2502.02(B)(4)(b). While a post-conviction appeal may offer Soto a remedy, it would not be an adequate one given the peculiar circumstances. "[A]n accused would not be afforded a meaningful review of an adverse decision on a motion to dismiss and discharge on double-jeopardy grounds if that party must wait for final judgment as to all proceedings in order to secure review of the double-jeopardy decision." *Anderson*, 2014-Ohio-542, at ¶ 59. Similar to the double-jeopardy context, the premise of Soto's appeal is that he contracted for the assurance of not being reindicted and required to go through the criminal judicial process on charges arising out of the same incident as the 2006 indictment. *Id.* at ¶ 58 (in the double-jeopardy context, a post-conviction appeal is not an adequate remedy because the Double Jeopardy Clause protects not only against being punished twice for the same offense, but also against being tried twice for the same offense). Thus, for example, if Soto were to be acquitted of the charges in the new indictment, he would have no meaningful or effective remedy by an appeal after final judgment as to all proceedings because he will have already been required to go through the judicial process that his motion sought to bar in the first place. *Anderson*, 2018-Ohio-3051,

at ¶ 8 (8th Dist.) ("[j]ust as *Anderson* involved the defendant's right not to be tried twice, so too do *Carpenter* and *Dye* involve a defendant's expectation that a guilty plea would bar additional charges unless the state specifically reserved the right to file additional charges"). This is a situation where "the need for immediate review outweighs the substantial interest in avoiding piecemeal litigation," supporting our finding that the final prong is met too. *In re Grand Jury Proceeding of John Doe*, 2016-Ohio-8001, ¶ 22.

{¶19} Therefore, we find that the trial court's June 6, 2024 order is a final and appealable order.[2]

### B. *Carpenter* and Its Progeny Do Not Apply to Bar the Indictment

{¶20} It is important to stress that, in this appeal, Soto is attempting to enforce an alleged *contractual* right; in his prior appeal (*State v. Soto*, 2019-Ohio-4430), he attempted to enforce *constitutional* rights under the Double Jeopardy Clause. Soto's current appeal is dependent on finding that the 2006 plea agreement contains an implied promise by the State not to prosecute him for any further offenses that may arise out of the same incident. Soto argues that, based on *Carpenter*, the plea agreement contained such an implied term. However, as

---

[2] The State relies on *State v. Ammons*, 2019-Ohio-286 (9th Dist.) to argue the order here is not final and appealable. While we recognize that the Supreme Court of Ohio identified *Ammons* as "concluding that the issue was not ripe for review in an interlocutory appeal," and therefore potentially conflicts with the Eighth District's opinion in *Anderson* (*see State v. Soto*, 2019-Ohio-4430, ¶ 20, fn. 3), the opinion in *Ammons* does not explain why the appellate court granted the State's motion to limit the interlocutory appeal to the denial of the motion to dismiss the indictment on double-jeopardy grounds and *Ammons* never mentioned, let alone conducted an analysis of, R.C. 2502.02.

explained below, the principles from *Carpenter* and its progeny do not apply to the facts and scenario here.

### 1.    Standard of review

{¶21} "Generally, we review a trial court's decision on a motion to dismiss an indictment for an abuse of discretion." *State v. Hudson*, 2022-Ohio-1435, ¶ 19. A trial court abuses its discretion when its conduct is unreasonable, arbitrary, or unconscionable. *State v. Hill*, 2022-Ohio-4544, ¶ 9. However, when the issue presented raises a question of law, we review the trial court's decision de novo. *Hudson* at ¶ 19 (reviewing, de novo, the trial court's denial of a motion to dismiss an indictment based on lack of subject-matter jurisdiction). Apart from these general principles, it does not appear the Supreme Court of Ohio has definitively determined the standard to be used in reviewing a decision regarding whether the principles from *Carpenter* apply to dismiss an indictment. *See State v. Azeen*, 2021-Ohio-1735, ¶ 35-36, 58-59. Yet, regardless of whether we apply an abuse-of-discretion, de novo, or mixed-question-of-fact-and-law standard, the outcome here would be the same: affirmance.

### 2.    Applicable law

{¶22} "Separate and apart from the constitutional protections provided by the double-jeopardy provisions, a plea agreement may bar further charges based on principles of contract law." *Soto*, 2019-Ohio-4430, at ¶ 19. "The underlying premise is that when a plea rests on a promise made by the prosecutor, that promise

must be fulfilled." *Id.* Of course, a promise may be expressly stated in the written plea agreement itself. However, the Supreme Court in *Carpenter* found that, under certain circumstances, it may also be "necessary to recognize what is basically an implied promise on the part of the state not to prosecute the defendant for any further offenses that may arise out of the same incident." *State v. Zima*, 2004-Ohio-1807, ¶ 11.

{¶23} In *Carpenter*, the defendant was indicted on one count of felonious assault arising from a stabbing. *Carpenter*, 68 Ohio St.3d 59 at syllabus. He pleaded guilty to a lesser-included offense of attempted felonious assault. *Id.* "At the time the state entered into the [plea] agreement, it was aware that the victim was in a coma and would very probably die, allegedly as a result of the defendant's actions. The plea agreement contained no reference to additional prosecution in the event of the alleged victim's death." *Id.* The trial court sentenced defendant to a term of imprisonment. *Id.* The victim later died and, after being released from prison, the defendant was indicted for murder. *Id.*

{¶24} In analyzing whether the State was barred by the plea agreement from indicting the defendant for murder, the Supreme Court of Ohio explained:

> In the present case, the state had actual knowledge of the alleged victim's condition at the time of the plea agreement and knew death was possible. Nevertheless, the state accepted a plea in which it agreed to reduce the charge of felonious assault to attempted felonious assault and recommend the imposition of a minimum sentence of two to ten years. By accepting a plea to a lesser included charge, the state obtained a definite prison term for the defendant and avoided the

uncertainties of trial. In exchange, the appellant anticipated that by pleading guilty to attempted felonious assault, and giving up rights which may have resulted in his acquittal, he was terminating the incident and could not be called on to account further on any charges regarding this incident. We think this expectation was entirely reasonable and justified and that the prosecutor was aware of this expectation. Therefore, if the state wanted to reserve its right to bring further charges later, should the victim die, the state should have made such a reservation a part of the record.

Accordingly, we hold that the state cannot indict a defendant for murder after the court has accepted a negotiated guilty plea to a lesser offense and the victim later dies of injuries sustained in the crime, unless the state expressly reserves the right to file additional charges on the record at the time of the defendant's plea.

*Id.* at 61-62.[3]

{¶25} The Supreme Court of Ohio has recognized certain factors a court should consider when determining whether a plea agreement included an "implied promise on the part of the state not to prosecute the defendant for any further offenses that may arise out of the same incident." *Zima*, 2004-Ohio-1807, at ¶ 11, 14. For example, there must have been a negotiated plea. *See Carpenter*, 68 Ohio St.3d at 61-62; *Azeen*, 2021-Ohio-1735, at ¶ 3 (by its terms, *Carpenter* specifically applies only to negotiated pleas). Additionally, the court must decide whether, under the circumstances, the defendant had a reasonable expectation that he or she could no longer be held accountable for any additional charges regarding the

---

[3] We recognize that the Supreme Court of Ohio has analyzed the principles from *Carpenter* in a case that did not involve a victim who died after the guilty plea. *State v. Harrison*, 2009-Ohio-3547, ¶ 3, 30, 38, 49-60 (involving unauthorized use of a computer, pandering obscenity, and various other crimes).

incident.[4]  *See Carpenter*, 68 Ohio St.3d at 61-62; *Zima*, 2004-Ohio-1807, at ¶ 11-12; *State v. Harrison*, 2009-Ohio-3547, ¶ 45.

**{¶26}** Whether a defendant had such a reasonable expectation of finality is dependent on the unique factual scenario of each case.  One condition is that, at the time of the negotiated plea, the State must have known of the future charges.  *See Zima*, 2004-Ohio-1807, at ¶ 12-14, citing *State v. Lordan*, 116 N.H. 479 (1976); *Carpenter*, 68 Ohio St.3d at 60-62 (at the time of the plea agreement, the State knew the victim had been stabbed by the defendant, the victim's resulting condition, and that the victim "would very probably die" as a consequence).  In *Lordan*, the prosecutor, who was dissatisfied with the sentence imposed, brought additional charges against the defendant, which the Supreme Court of New Hampshire barred because "[t]he prosecutor knew the facts on which the [additional] charges [were] based at the time that the defendant pleaded guilty" to the initial charges, and nothing prevented the prosecutor from bringing the additional charges at the same time as the initial charges.  *Lordan* at 480-481; *see also Harrison* at ¶ 49 (Supreme Court of Ohio noting that *Lordan* is "an appropriate example of a plea agreement closing the door on any further action against the defendant arising from the same events").  Accordingly, the State must give notice of its intent to pursue additional charges when "'the prosecutor has knowledge of and jurisdiction over all [the]

---

[4] The two factors identified in this paragraph do not comprise an exhaustive list of factors to be considered.

offenses and the defendant disposes of all charges then pending by a guilty plea to one or more of the charges.'" *Zima*, 2004-Ohio-1807, at ¶ 13, quoting *Lordan* at 482. Also, a court should consider whether there was new information that would justify the additional charges. *Harrison* at ¶ 53. Application of these various factors shows that the Supreme Court of Ohio has limited the situations in which a court should find such an implied promise in a plea agreement.[5]

### 3. Application

**{¶27}** According to Soto, *Carpenter* is "on point" and the State was required to expressly reserve the right in the plea agreement to bring later charges. There is no dispute that the State did not expressly reserve such a right in the plea agreement with Soto. The State responds by arguing that, unlike the scenario presented in *Carpenter*, the prosecutor was not required to reserve the right to bring additional charges arising out of the incident.

**{¶28}** We disagree with Soto that *Carpenter* is "on point." On the contrary, we find *Carpenter* and its progeny to be distinguishable. Specifically, circumstances for finding an implied promise not to prosecute Soto for any further offenses that may arise out of the same incident are absent. Namely, at the time Soto pleaded guilty to the initial charges, the prosecutor did not have knowledge of

---

[5] The Supreme Court of Ohio has addressed *Carpenter* in only one other case besides those cited in this section. *See State v. Dye*, 2010-Ohio-5728, ¶ 1-3, 26 (involving whether there was a "negotiated guilty plea" within the meaning of *Carpenter*; defendant had been driving drunk when his vehicle hit the victim, "[b]oth the state and [defendant] were aware of the grave nature of [victim's] injuries" at the time of the plea, evidence supported that the victim's "death from those injuries was foreseeable," and the victim died from complications of his injuries after the guilty plea).

the current offenses. *Zima*, 2004-Ohio-1807, at ¶ 13. In *Carpenter*, at the time of the guilty plea, the State knew the victim's condition, that the defendant had caused the victim's condition by stabbing the victim, and that death was "possible." *Carpenter*, 68 Ohio St.3d at 61. Soto erroneously distorts this to mean that any time the State is aware it is "possible" that additional charges could be warranted, there is an implied promise no further charges will ever be filed. (Appellant's Brief at 7, 21). Soto uses this theory to give rise to his claim that he had a reasonable expectation that he could no longer be held accountable for any additional charges arising out of the same incident. We disagree. *See Carpenter*, 68 Ohio St.3d at 61-62; *Zima*, 2004-Ohio-1807, ¶ 11, 13-14; *Harrison*, 2009-Ohio-3547, at ¶ 49, 53.

{¶29} The record confirms that Soto voluntarily and intentionally chose to tell false narratives from the time law enforcement first arrived on the scene in 2006 until his confession in 2016. The record also shows he sought to deceive the State during its investigation, staging an accident scene, altering evidence, and lying to various law enforcement officers. This led to, for example, errors in the 2006 coroner's report, which ruled the child's injuries were consistent with the accident Soto described in his false description of the incident. Consequently, Soto's purposeful deception led to the lesser charges brought against him in 2006.

{¶30} Because of the lies he perpetuated, it follows from the peculiar facts and circumstances in this case that Soto could not have had a reasonable expectation at the time of his plea that he could no longer be held accountable for any additional

charges regarding the incident.[6] *See Zima*, 2004-Ohio-1807, at ¶ 11, 13-14. As the trial court found in 2024, the historical record does not show the State knew—at the time Soto pleaded guilty—that Soto's son was beaten to death by his father. In fact, despite its investigation, the record does not indicate the State knew that Soto had intentionally committed any act to harm his son or that his son had been harmed in the house. *See Zima*, 2004-Ohio-1807, at ¶ 13-14; *compare Carpenter*, 68 Ohio St.3d at 61-62 (at the time of the initial charges, the State knew the victim had been stabbed by the defendant and knew the victim's death was a foreseeable possibility, yet chose to accept a plea to charges lesser than murder). In other words, the prosecutor did not have "'knowledge of . . . all [the] offenses.'" (Bracketed text in original.) *Zima*, 2004-Ohio-1807, at ¶ 13, quoting *Lordan*, 116 N.H. at 482.

{¶31} Even if the State suspected that Soto's culpability was greater than he described when he entered his guilty plea, the State did not know the facts on which the current charges are based and did not simply stick its head in the sand. New evidence, in the form of Soto's voluntary confession in 2016, provided investigators with the factual basis for the charges on which Soto was indicted in 2016: aggravated murder, murder, felonious assault, kidnapping, and tampering with evidence. *Compare Harrison*, 2009-Ohio-3547, at ¶ 49-51, 53 (defendant's expectation that he could no longer be held accountable for any additional charges

---

[6] We note that, after Soto voluntarily confessed to beating his son to death, a law enforcement officer asked Soto, "What do you think should happen?" and Soto responded, "I guess go to prison or whatever. Whatever Jesus says, I mean, trying to figure what he wants me to do." (July 25, 2016 Soto Interview Tr. at 15).

arising out of the same incident was reasonable where there was "no new information that would justify [the] additional charges being brought against him").

**{¶32}** Soto concedes he is not trying to imply that the information contained in his 2016 confession was available to the prosecutor back in 2006. He instead contends the State had sufficient evidence in 2006 to put it on notice that it was "possible" additional charges could be filed and, therefore, the State needed to expressly reserve the right to pursue additional charges. (Appellant's Brief at 21-22). We decline to extend the principles in *Carpenter* and its progeny to the posture where the State must guard against every possible eventuality. This is especially true where, as in this case, the facts provided by the defendant describe two distinct criminal incidents. Moreover, based on our review of the record and despite Soto's argument to the contrary, the State did not have sufficient evidence at the time of Soto's guilty plea to put it on notice that it needed to reserve the right to bring additional charges. In other words, without the new narrative, the evidence does not establish the State should have known the current offenses.

**{¶33}** The requirement from *Carpenter* and its progeny, that the State reserve its right to further prosecute a defendant for any additional offenses arising out of the same incident, does not apply to this case. The plea agreement does not include an implied promise by the State not to prosecute Soto for any further offenses that may arise out of the same incident. Consequently, the plea agreement does not prohibit the State from bringing the charges in the 2016 indictment.

### C.     <u>Soto Cannot Enforce the Plea Agreement</u>

**{¶34}** Separately, we also find that Soto cannot enforce the plea agreement because he breached it in 2006. Both parties maintain that contract-law principles apply to interpreting and enforcing the plea agreement. The State contends those principles result in rejecting Soto's argument that the State breached the plea agreement by filing the indictment in 2016. We agree. Regardless of whether the principles from *Carpenter* apply to include an implied promise in the plea agreement not to prosecute Soto for any further offenses arising from the same incident, the trial court did not err in denying Soto's motion to enforce his plea agreement. This is because, as explained below, the State was relieved from any such promise when Soto breached the plea agreement back in 2006.[7]

#### 1.     Applicable law

**{¶35}** "'Principles of contract law are generally applicable to the interpretation and enforcement of plea agreements.'" *State v. Billingsley*, 2012-Ohio-4307, ¶ 26, quoting *State v. Bethel*, 2006-Ohio-4853, ¶ 50; *see also State v. Dye*, 2010-Ohio-5728, ¶ 21. However, "[b]ecause the defendant's constitutional rights are at stake in the plea process, the concerns underlying a plea agreement

---

[7] We affirm the trial court's judgment on this basis even though the trial court did not determine Soto breached the plea agreement. *See State v. Ross*, 2024-Ohio-6076, ¶ 26 (7th Dist.) ("[a]ppellate courts may affirm a trial court's judgment for reasons that differ from those used by the trial court"); *State v. Middleton*, 2020-Ohio-1308, ¶ 31 (2d Dist.) (same); *State v. Carlisle*, 2011-Ohio-6553, ¶ 17 (affirming judgment on different grounds from those relied on by lower court). The State's initial briefing to the trial court raised the issue of whether Soto may have breached the plea agreement.

differ from and go beyond those of commercial contract law." *Dye* at ¶ 21, citing *Carpenter*, 68 Ohio St.3d at 61.

{¶36} Significantly, given that plea agreements are contracts between the State and a criminal defendant and are subject to contract-law principles, "'a breach of the contract by the defendant relieves the prosecution of any obligations under the agreement." *State v. Santiago*, 2023-Ohio-561, ¶ 17 (3d Dist.), quoting *State v. Payton*, 2010-Ohio-5178, ¶ 11 (6th Dist.); *see also Sanderson v. Ohio Edison Co.*, 69 Ohio St.3d 582, 586, 1994-Ohio-379 (1994) (breach of contract relieved other party from its duty under the contract). In other words, "[a]fter a plea agreement has been accepted by the court, a defendant has a contractual right to enforce the prosecutor's obligations," but the prosecutor is relieved from any such obligations under the plea agreement if the defendant breaches the agreement. *State v. Gutierres*, 2024-Ohio-2767, ¶ 31 (7th Dist.); *see also State v. Bembry*, 2014-Ohio-5498, ¶ 22, 24-27 (7th Dist.) (although the State did not abide by terms of the plea agreement, the State had been relieved of its obligations because the defendant had breached the agreement). A similar principle applies in instances where a defendant is seeking specific performance of an agreement with the State. *E.g., State v. Weaver*, 2015-Ohio-3610, ¶ 14-15 18 (2d Dist.) (where defendant argued the State should be forced to comply with the terms of a diversion agreement, the defendant was not entitled to enforce the agreement's terms because defendant had violated its terms). A similar principle also applies to "non-prosecution agreements." *State*

*v. Small*, 41 Ohio App.3d 252 (8th Dist. 1987), syllabus ("[w]here an agreement not to prosecute is conditioned upon the defendant's agreement to 'fully cooperate' or otherwise provide truthful information, but it is later discovered that the defendant has not fulfilled the terms of the agreement, then the defendant's failure to comply with his obligation nullifies the government's promise not to prosecute").

{¶37} When the facts presented are undisputed, the determination of whether those facts constitute a breach of a written contract is a question of law. *Luntz v. Stern*, 135 Ohio St. 225 (1939), paragraph five of syllabus; *State v. Blair*, 2012-Ohio-769, ¶ 16 (4th Dist.) (involving whether the State breached the terms of a plea agreement); *State v. Blake*, 2011-Ohio-3318, ¶ 17 (10th Dist.) ("[g]enerally, where the facts are undisputed, a trial court's determination as to whether a certain act constitutes a breach of contract is a question of law to be reviewed de novo"). Here, the relevant facts are undisputed. As shown below, those facts come from four documents submitted, and relied on, by Soto himself in his motion: the written plea agreement; the transcript of the change of plea hearing in 2006; the transcript of the sentencing hearing in 2006; and the transcript from Soto's 2016 interview with a detective. Therefore, we review the issue de novo. *Id.*

### 2.    Application

{¶38} Applying the legal principles above, we find that Soto breached his plea agreement with the State and, therefore, he cannot enforce it against the State to dismiss the indictment. The plea agreement specifically states, "By pleading

guilty I [Soto] admit committing the offense and will tell the Court the facts and circumstances of my guilt." During the change of plea hearing, Soto perpetuated his lies and false narrative when the following exchange took place between the judge and Soto:

> Q. . . . I would like you to tell me what you did.
>
> A. I went out that day.
>
> Q. And what happened?
>
> A. And I was going to use – driving around and I dropped [my son] off between the barn and garage, or the barn and the trailer. I was going around the pole barn in the back of the yard and went around the corner, and smacked him.
>
> Q. And you hit him with the ATV?
>
> A. Yes, Your Honor.

(July 6, 2006 Tr. at 7-8). The judge then said he had the written plea agreement in front of him. He asked Soto to review it and then, if Soto agreed with what it said, to sign it. Soto reviewed and signed the plea agreement in front of the judge, indicated he understood it, and said he did not have any questions about it. Soto's counsel and the prosecutor also signed the plea agreement, and the judge accepted the plea.

**{¶39}** Then, during the August 31, 2006 sentencing hearing, Soto similarly lied to the judge, saying that he was riding an ATV, he came around the edge of his garage, his son walked out but Soto did not see him, and Soto hit him with the ATV.

(*See, e.g.,* Aug. 31, 2006 Tr. at 7). During that hearing, the following exchange took place between the judge and Soto:

> Q. . . . [W]hen you were questioned at the examination room, you stated that you were riding a four wheeler, [your son] ran out, and you ran over him?
>
> A. That's correct.
>
> Q. Is that what happened; is that what you're saying what happened?
>
> A. Yeah.

(*Id.* at 8-9).

**{¶40}** However, in 2016, Soto admitted to killing his son and staging the ATV accident. Specifically, after Soto was informed of and waived his Miranda rights, the following exchanges took place between Soto and a detective at the Putnam County Sheriff's Department, which revealed Soto *did not* "tell the Court the facts and circumstances of [his] guilt" as required by the terms of his plea agreement.

> [SOTO:] Got out of prison, did five years for child endangering . . . I ended up covering it up, I mean, and saying it was the four-wheeler, but that wasn't true.
>
> . . .
>
> . . . I said I hit him with the four-wheeler . . .
>
> [DETECTIVE:] And you're here to tell us apparently that's not what happened?
>
> [SOTO:] That's not what happened. I basically covered it up, and basically my past became my life and (inaudible) apologies. Basically trying to follow our Lord and Savior, man, this is what needs to happen, I mean.

[DETECTIVE:]  Why don't you tell me, tell me what happened?

[SOTO:]  . . . I just beat him, beat him up really, basically.  I mean basically it was a torment, tortmenture (sic), I mean.

. . .

[DETECTIVE:]  Okay, the day that you beat him, that he died, what did you do to him?  Was he in his bed?  Was he in the couch, was he in the front room?

[SOTO:]  He was in the bathroom, I mean I had a water fountain on him, or water, I had water and stuff on him and stuff.  And, I mean, freaking, I mean I basically just tortured him, punched him, freaking just not knowing anything about what a father should have been doing, I mean, freaking - -

[DETECTIVE:]  Did you punch him like in the face?

[SOTO:]  I just punched him, smacked him in the face, punch him in the face, and then just basic (inaudible), you deserve everything you get man, freaking.

. . .

[DETECTIVE:]  How did you know he was dead?

[SOTO:]  Uh, I punched him in the stomach.  I punched him in the stomach and then basically he took the last breath, and then I mean I started panicking and stuff, you know what I mean, flipped out, I guess, really.  . . .

(July 25, 2016 Soto Interview Tr. at 4-9).  Thus, Soto revealed to the State in 2016 that he had violated the plea agreement.  The State filed the indictment at issue a few weeks later.

{¶41} In spite of his 2016 confession, Soto now seeks to enforce his alleged contractual right under the plea agreement to prevent the State from charging him with additional crimes.  Even assuming he had such a contractual right, Soto is not

permitted to enforce it. The trial court accepted the plea agreement and Soto then breached it. We find Soto's breach of the plea agreement relieved the prosecution from any obligations under the plea agreement. *E.g.*, *Payton*, 2010-Ohio-5178, at ¶ 11 (6th Dist.); *Santiago*, 2023-Ohio-561, at ¶ 17 (3d Dist.); *Gutierres*, 2024-Ohio-2767, at ¶ 31 (7th Dist.). Soto lost any contractual right he had to enforce the prosecutor's obligations under the plea agreement—including any implied obligation not to charge him with additional crimes. *Id.* Therefore, contrary to Soto's assignment of error, the trial court did not commit error when it overruled Appellant's Motion to Enforce the 2006 Plea Agreement and Dismiss the Indictment. Consequently, his assignment of error is overruled.

## IV. CONCLUSION

{¶42} For the foregoing reasons, Appellant's assignment of error is overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Putnam County Court of Common Pleas.

*Judgment Affirmed*

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignment of error is overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

Mark C. Miller, Judge

Juergen A. Waldick, Judge

John R. Willamowski, Judge

DATED:
/jlm